[COMMON LAW. LOCAL LAW.]

## RICARD v. WILLIAMS and Others.

Possession of land by a party, claiming it as his own in fee, is *prima facie* evidence of his ownership and seisin of the inheritance.

But possession alone, unexplained by collateral circumstances, which show the quality and extent of the interest claimed, evidences no more than the mere fact of present occupation by right.

But if the party be in under *title*, and by mistake of law supposes himself possessed of a less estate than really belongs to him, the law will remit him to his full right and title.

It is a general rule that a disseissor cannot qualify his own wrong, but must be considered as a disseissor in fee.

But this rule is introduced only for the benefit of the disseissee, for the sake of electing his remedy.

And it must also appear that the party found in possession entered without right; for if his entry were congeable, or his possession lawful, his entry and possession will be considered as limited by his right.

Presumptions of a grant, arising from the lapse of time, are applied to corporeal, as well as incorporeal hereditaments.

They may be encountered and rebutted by contrary presumptions, and can never arise where all the circumstances are perfectly consistent with the non-existence of a grant.

*A fortiori*, they cannot arise where the claim is of such a nature as is at variance with the supposition of a grant.

In general, the presumption of a grant is limited to periods analogous to those of the statute of limitations, in cases where the statute does not apply.

Where the statute applies, the presumption is not generally resorted to:

but if the circumstances of the case are very cogent, and require it, a grant may be presumed within a period short of the statute.

Under the laws of Massachusetts and Connecticut, the power of an administrator to sell the real estate of his intestate, under an order of the Court of Probates, must be exercised within a reasonable time after the death of the intestate.

The case of such a power to sell is not within the purview of the statute of limitations of Connecticut, which limits all rights of entry and action to fifteen years after the title accrues; but the reasonable time, within which the power must be exercised, is to be fixed by analogy to that statute.

One heir, notwithstanding his entry as heir, may afterwards, by disseisin of his co-heirs, acquire an exclusive possession, upon which the statute will run both against his co-heirs and against creditors.

An heir may claim an estate by title distinct or paramount to that of his ancestor; and if his possession is exclusive under such claim, against all other persons, until the statute period has run, he is entitled to the protection of the bar.

ERROR to the Circuit Court of Connecticut.

This was a suit instituted by the defendants in error against the plaintiff in error, in the Court below. The original action is commonly known in Connecticut by the name of an action of disseisin, and is a real action, final upon the rights of the parties, and in the nature of a real action at the common law. The cause was tried upon the general issue, *nul tort*, *nul disseisin*, and a verdict being found for the demandants, a bill of exceptions was taken to the opinion of the Court upon matters of law at the trial.

The history of the case, as it stands upon the record, is in substance as follows. The demandants claimed the estate in controversy, by purchase from the administrator of William Dudley, at a sale made by him for the payment of the debts of his intestate, pursuant to the laws of Connecticut, which authorize

a sale of the real estate of any person deceased, for the payment of his debts, when the personal assets are insufficient for that purpose. In order to establish the title of William Dudley in the premises, the demandants proved that Thomas Dudley, the father of William, was, in his lifetime, possessed of the premises, as parcel of what were called the *Dudley lands*, and died possessed of the same in 1769, leaving seven children, of whom William was eldest, being of about the age of fourteen years, and Joseph Gerriel, the youngest, being about four years of age. Upon the death of his father, Joseph Mayhew, the guardian of William, entered into possession of the Dudley lands, and of the demanded premises as parcel, taking the rents and profits in his behalf during his minority; and upon his arrival of age, William entered and occupied the same, taking the rents and profits to his own use, until his death, which happened in the year 1786; all his brothers and sisters being then living. During the life of William, no other person claimed any right to enter or occupy the premises, except that his mother used to receive one-third of the rents and profits, until she died in the year 1783. During his life, and while in possession of the premises, William always declared that he held the same only for life, and therefore would not allow any improvements on them at his expense; no leases were made by him except for short periods; and no attempt was made by him to sell or convey the premises; and he declared that he had no right to sell them, and that upon his death they would descend to his son Joseph Dudley, under whom the tenant de-

rived his title, in the manner hereafter stated.   No administration was ever taken in Connecticut upon the estate of William Dudley, until 1814, and his estate was then declared insolvent ; and, in 1817, the lands in controversy were sold by the administrator, by order of the Court of Probates, for the payment of the debts found due under the commission of insolvency.

To rebut the title of the demandants, and to establish his own, the tenant proved that William Dudley died intestate, leaving seven children, the eldest of whom was Joseph Dudley.   Upon the death of his father, the guardian of Joseph (the latter being within age,) entered into possession of the Dudley lands, and the demanded premises as parcel, and used and occupied the same, receiving the rents and profits in behalf of Joseph, until his arrival of age, when Joseph himself entered into possession, claiming them as his own, and taking the rents and profits to his own use, and holding all other persons out of possession, until the year 1811 and 1812, when he sold the demanded premises, and the tenant, either by direct or mesne conveyances under Joseph, came into possession, and has ever since held the premises in his own right.   In the year 1811, Samuel Dudley, the brother of Joseph, claimed title to some of the Dudley lands possessed by Joseph, and brought an action of ejectment for the recovery of them, but the suit was compromised by Joseph's paying him about 2,000 dollars ; and about the same time Joseph settled with another of his brothers, but did not pay him any thing.   But Joseph never admitted that his brothers

or sister had any interest in the lands; and said he could hold them, and did hold them in the same manner as he held the lands in Massachusetts.

The will of Governor Dudley, which was admitted to probate in Massachusetts in 1720, was also in evidence, but neither party established any privity or derivation of title under it.

Upon these facts, the tenant prayed the Court to instruct the jury, that the demandants had not made out a title in themselves, nor in William Dudley. Not in themselves, because the sale by the administrator to the demandant was void, by force of the statute regarding the sale of disputed titles, the tenant being in possession of the property at the time of the sale, claiming it as his own, and that William Dudley had acquired no title to the property in question by possession, as he claimed to hold the same only during his life, and could therefore acquire no title, except for life by any length of possession, and that if he could acquire title by possession, if this estate descended from Thomas Dudley, said William could not, in seventeen years, acquire a title against his brothers and sisters, or at least against those of them who had not been of full age for five years before the death of said William; and if the demandants could recover at all, it could only be for that proportion of the estate which descended from William as one of the heirs of Thomas Dudley.

The tenant further prayed the Court to instruct the jury, that if they found that Joseph Dudley had, for more than fifteen years before he sold the land in controversy, been in possession of the same, exclusively

claiming them as his own, and holding out all others, he had gained a complete title to the property.

The tenant further claimed that the Court ought to have instructed the jury, that under the circumstances attending the possession of said lands by William Dudley, the father, and by Joseph Dudley, and the length of time which had elapsed since the death of said William, without any claim on the part of the creditors of said William, the jury might presume a grant from some owner of the land to William for life, with remainder to his eldest son. But the Court did charge and instruct the jury that the sale by the administrator under an order of Court was not within the statute regarding disputed titles, and was not therefore void. That William Dudley, by mistaken constructions of the will of Governor Dudley, might have claimed an estate for life in the premises, and that such mistake would not operate to defeat his title by possession. That the length of time in which this estate had been occupied by William and Joseph Dudley, would bar any claims by the other children of Thomas Dudley deceased, and that the jury were authorized to presume a grant by said children to their brother William Dudley deceased, and, therefore, if the demandants recovered, they must recover the whole of the premises.

The Court also charged the jury that, as against the creditors of William Dudley, neither Joseph Dudley nor the tenant had gained title to the lands in controversy by possession, and that the jury were not authorized to presume a grant to Joseph.

To which several opinions of the Court, the tenant by his counsel excepted.

Mr. *D. B. Ogden,* for the plaintiff in error, argued, 1. That this being a writ of entry, in which the demandants or plaintiffs counted on their own seisin, and could count in no other way ; and as they were unconnected with any other seisin than their own, it was necessary for them to have shown upon the trial an actual entry. Without such actual entry there never could have been any seisin or possession in them; and without such seisin or possession in them there never could have been any disseisin or forcing them out of possession. In an action of ejectment, which is a mere legal fiction, the execution of the lease, the entry under it, and the ouster are all stated in the declaration, and they must be proved upon the trial. Unless the defendant will afford the means of that proof by his confession, the plaintiffs cannot obtain a verdict. So here the entry and ouster must be proved, or the plaintiffs never can recover ; because the entry and ouster are the very foundation of the whole action. Actual seisin is as necessary in a writ of entry as a writ of right.[a] The actual seisin and ouster are expressly stated in the declaration. They are material and necessary allegations. It is a universal rule, that whatever is a material and necessary allegation in the declaration, is a material and necessary part of the proof upon the trial, unless that necessity be dispensed with by

*a* Green v. Liter, 8 *Cranch,* 229. 244.

1822.

Ricard
v.
Williams.

the pleadings. Now, in this case, there is no pretence that any actual entry was ever made in the premises in question by the plaintiffs. None was proved upon the trial; the demandants were, thereupon, not entitled to a verdict.

By the local law of Massachusetts and Connecticut an administrator has no seisin of the lands of his intestate. They descend to his heir at law, subject to a naked power in the administrator, in case of an insufficiency of the personal property to pay the debts of his intestate, to sell the lands for the payment of those debts. The administrator or executor may lawfully sell them, whether they be in the possession of a devisee, or an heir, or their heirs or assigns, or of a disseisor of a devisee or heir: for, say the cases, the naked authority of an administrator to sell on license cannot be defeated by the seisin of a devisee, or heir, or by their alienation or disseisin.[a] By the law of Connecticut, which, in this respect, is precisely similar to that of Massachusetts, the administrator may sell the lands of his intestate for the payment of debts, and his conveyance vests in the grantee, not the possession or seisin of the land, because that was never in the administrator; but a right to the property, and a right of entry into it; a right to the possession of it, but not the possession itself. Upon this right of possession, the grantee might at once bring an ejectment, in which he need prove no actual entry and ouster, but they must be

a Drinkwater v. Drinkwater, 4 *Mass. Rep.* 354. Willard v. Nelson, 5 *Mass. Rep.* 240. Hays v. Jackson, 6 *Mass. Rep.* 143.

confessed by the defendant, or he might make an actual entry, and found upon it this remedy of a writ of entry. He has not thought proper to bring an ejectment, but has brought a writ of entry ; and he must, therefore, prove an actual entry and ouster.[a]

2. Independent of this objection, the demandants are not entitled, upon the evidence set forth in the bill of exceptions, to the judgment which they have obtained. They claimed under a deed from the administrator of William Dudley, deceased. It became, therefore, necessary for them, in order to entitle themselves to recover, to prove, that William Dudley, in his lifetime, and at the time of his death, was seized of an estate in the premises, which descended to his heirs ; because, unless William Dudley was seized of such an estate in the premises, it is manifest that his administrator could grant no title to the property.

Did the demandants prove such a seisin in William Dudley ? They proved that Thomas Dudley the father of William, was in possession of the premises at the time of his death, in 1766 ; that upon the death of Thomas, the *guardian* of William, then an infant of 14 years of age, in right of his ward, entered into possession of the premises, receiving the rents and profits thereof, and continued in possession until William came of age, in 1776 ; that William then took possession, and continued in the exclusive possession thereof, until he died, in 1786. This was all the evidence of title in William offered by the plaintiff upon the trial : was this evidence of title suf-

1822.

Ricard
v.
Williams.

[a] Drinkwater v. Drinkwater, 4 *Mass. Rep.* 354

ficient? Thomas, the father, died in possession, in 1769. What estate he had in the premises does not appear; but the subsequent acts of William afford strong evidence, that his father had not an estate in fee in the premises, but that his estate, whatever it was, terminated with his life. If Thomas, the father of William, had had an estate in fee in the premises, it would, upon his death, have either descended to his heirs at law, or vested in his devisees if he had devised it by will. It is not pretended that he made any devise of it, and of course it would have descended to his heirs at law. The record states, that he left seven children, all of whom, by the law of Connecticut and Massachusetts, were at that time his heirs at law. The *exclusive* possession of the premises by William, taken after the death of his father, is therefore conclusive evidence, that William did not consider his father as having been possessed of the fee of this land; and the rest of the children of Thomas never having claimed any right to enter and occupy the premises, or any part thereof, after they came of age, affords strong evidence, that they also knew and believed, that Thomas, their father, had no estate in the premises, which could descend to his heirs at law. At the time Thomas died, William, his son, was 14 years of age, and his guardian, immediately upon his death, takes possession of the land, as the property exclusively of his ward William :—Thus affording his testimony, also, by his acts, that he knew that Thomas had no estate in the premises which could descend to his heirs at law. What was the estate which Thomas had in the premises does not appear, but it is

manifest, from the acts of all the parties at the time, that it is not an estate in fee simple. William, then, did not enter as heir at law of Thomas, his father. He can therefore claim nothing from the possession of his father, as showing any title to the fee of this property : because, if his father was seised of the fee *by right*, it would have descended to his heirs at law, and if seised of it by wrong as *disseisor*, the descent would still have been cast upon his heirs at law.

Under what claim of title, then, did William enter ? As he did not enter as heir at law, his entry must have been either adverse to his father's title, and of course to his heirs at law, in which case his possession has no connection with his father's ; or, he must have entered considering his father as a mere tenant for life or for years with remainder to him and his heirs, or that the father was tenant in tail, and the estate limited to William, his eldest son, and so on to the eldest male heir. If the father was tenant for life, or for years, with remainder to William, then William's right of possession commenced, when his father's ended, in 1769 : and under that right William possessed the premises from 1769, down to his death, in 1786 ; which would, under the laws of Connecticut, taking away the right of entry after 15 years, give him, or those claiming under him, a right to recover the premises in question, if out of possession, or to hold them against all the world, if in possession, provided he claimed to hold the possession as the owner in fee. And why ? Because William, in that case, would have

been in possession 17 years, and not because his father had been in possession before him.

But that William did not enter, claiming that his father had been tenant for life, or for years, with remainder to him in fee, is manifest:

*First.* Because William, when in possession, declared that he held the premises only for life: and that upon his death, they belonged to his eldest son; and

*Secondly.* Because, after his entry he suffered his mother, the widow of the father, to receive one third of the rents and profits of these lands as her dower. She could be entitled to no dower, if her husband had been either a tenant for life or for years of the premises.

As, then, Thomas, the father of William, was not the owner in fee of this property, nor the tenant of it for life or for years, under what right did he claim it?

The answer to this question is, that it is most probable he claimed it as tenant in tail, limited to the eldest son.

*First.* Because, if Thomas was tenant in tail of these lands, his wife would have been entitled to her dower in them, which it has already been stated she took; and

*Secondly.* Because William frequently declared, that they were his for life only, and that after his death they belonged to his eldest son.

Now, if Thomas claimed these lands as tenant in tail, and if William also claimed them as tenant in

tail, and was really entitled to them as such, then upon his death, the estate in tail would vest in his eldest son, Joseph ; and the creditors of William could have no lien upon the property for his debts, nor the administrator no right to convey the property for the payment of any such debts ; and, of course, the demandants, the grantees of the administrator, have no right to recover in this case.

But it may be said that William had an estate in fee simple in these lands under the will of Governor Dudley, set forth in the record, which gave to his devisees an estate in fee simple, and not in fee tail. But it is a point of no importance whether that will gave the devisees a fee simple or a fee tail. How, if at all, William Dudley, or his father, were connected with the testator, no where appears on the record. There appears no connection of blood, and no privity of estate between them. His will therefore must be put entirely out of the question.

Again ; it may be said, that by the laws of Connecticut, there can be no grant of an estate in tail to continue longer than the life of the first donee ; and that all such estates given in tail, remain an absolute estate in fee simple to the issue of the first donee in tail.

What operation has this law upon the rights of these parties ? The argument is, that Thomas, the father of William, was not a tenant in tail, but in fee, of the premises in question, because, he being the issue of the first donee, became, by the local law, vested with an absolute estate in fee simple. Let it for a moment be admitted : what then ? William, his

eldest son, upon his death, entered into possession of the lands.   I have already shown that he did not enter into possession as devisee of Thomas, his father, because the latter died intestate ; nor as heir at law of his father, for he was not so ; but he entered, claiming that the estate, subject to his mother's right of dower, was his for life, and upon his death, would descend to his eldest son.   This is the claim under which William's entry was made, and under which the property has been possessed from 1769 down to the present hour ; a possession of 53 years; a possession, in favour of which any presumption would be justifiable ; a possession, in favour of which, to use the strong language of Lord Kenyon, the Court ought to presume *not only one, but one hundred grants.*

If, then, Thomas, the father of William, was seised in fee of the premises in question, as he made no devise of them to William, and as William did not enter as heir at law, we are certainly to presume that he entered with right, and that his claim to enter was a good one.   We are then to presume a grant, consistent with his entry and possession, and with the acts of all parties at the time.   We have a right to presume, that his father, being the tenant in fee, made a grant of the premises to his son William, in tail, limiting the estate to his, William's eldest son.   Such a grant is not inconsistent with the laws of Connecticut ; and is perfectly consistent with his claim, as always declared by him, that he was only entitled to the estate during his life, and that after his death it would go to his eldest son.   It is also consistent with his mother's claim of dower, to which she would

have been entitled, the grant of his father notwithstanding: and consistent with the possession taken at William's death, by his son Joseph, under whom we claim. This presumption would support and confirm a title, under a possession of fifty-three years. Any other would shake and unsettle titles which have, for half a century, been considered as good and valid.

If this grant be presumed from Thomas to William, then, according to the law of Connecticut referred to, Joseph, being the issue of William, the first donee, was the tenant in fee of the premises; and the plaintiff in error, being his grantee, is also the tenant in fee of them.

It was stated by the learned judge, in his charge to the jury, that as William had been so long in possession, the jury might presume a grant to him from his co-heir, in order to support that possession. But the nature of William's possession, the claim under which he must be presumed to have taken that possession, must be judged of according to the state of things at the time when he took the possession. He must be presumed to have continued in possession by the same right under which he originally claimed to enter into it, until it be shown that he acquired another right. Now, when William entered, upon the death of his father, in 1769, I have already shown, that he entered under some claim of right, distinct and different from that of heir at law. He cannot be presumed to have entered as grantee of his co-heirs at law, because such grant could not be made; he was not only an infant himself, but his brothers and

1822.

Ricard
v,
Williams,

sisters were all infants still younger than he was. As then when he entered, claiming the whole of this property as his own, William could have had no grant from his co-heirs; and as his possession must be presumed to have continued under the same claim of title under which he originally entered, it seems to be a presumption against all law, that he ever had a grant from his *co-heirs.*

It is a well established rule that the declarations of a person in possession of land as to his title are evidence against him and all persons claiming under him. In this case, we have the declarations of William Dudley, under whom the demandants claim, made while in possession of the land, that he held it for life only, and that after his death it would descend to his eldest son. If, then, declarations are evidence against all claiming under William, they, of course, are evidence against the demandants, and show that William never had any thing but an estate for life in the premises in question which expired with him; and there was no interest left which the administrator could sell after his death. In this view of the case, it is immaterial how long William's possession continued. It was a possession under a claim of an estate for life, and the possession was commensurate with the claim. As I have already shown that the plaintiff's title rests wholly on William's possession, and as William never pretended to any possession but for life, there can be *now* no title in the demandant. Presumptions are often made to support old claims of title accompanied by a long possession; but it is

new doctrine that a possession under a claim of an estate for life gives a fee.

It appears by the record, that immediately after the death of William Dudley, in 1786, Joseph, his eldest son, entered into possession of the premises by his guardian, and, afterwards, by himself, taking the whole rents and profits, and claiming the lands as his own, and continued in the exclusive possession thereof, holding all others out, until he sold the land in 1811 and 1812, when his grantees entered as owners, and continued to hold until this action in 1819. If, then, a possession of seventeen years in William gave him a title which is a sufficient ground of recovery for the demandant, why is it that a possession of thirty-three years in Joseph, and those claiming under him, does not give a good title to the defendants? The reason assigned by the demandants why this possession should not avail the defendants is, that William died in possession, and the possession of Joseph was but the continuance of William's possession, a part of the same title, and that title is subject to be sold for the payment of William's debts. But if the possession taken by Joseph was a possession taken under a claim adverse to the claim of a fee in William, then it would seem to follow as an inevitable consequence, that the possession of Joseph, and those claiming under him, would give them a good title. William died intestate, and left seven children. Joseph, the eldest, then being an infant, all these children, by the law of Connecticut, were his

heirs at law. Joseph, however, entered into the ex-. clusive possession of the whole of the premises, "keeping all others out." He did not, then, enter as heir at law, but he entered denying the rights of the heirs at law: he entered, therefore, under a claim of title adverse to them, and, of course, adverse to the claim of a fee now set up in William, his father. There can, in this case, be no presumption of a grant from his co-heirs when he entered, because they were infants of very tender years when he entered.

But not only can no grant be presumed from them to Joseph, but the record contains upon its face evidence that no such grant was ever made by them. The plaintiffs proved, that in 1811, two of the brothers claimed to be entitled to a portion of the property, which, at all events, shows that they had never granted it to Joseph. Inasmuch, then, as Joseph entered and continued in possession, claiming title, which title was adverse to any claim in the heirs at law of William, to any claim of the fee in William; and as this possession continued for thirty years, uninterrupted and undisturbed, it gave to Joseph, and to those claiming under him, a full and complete right to retain the possession against all the world.

We have, in this possession of Joseph, exclusively taken and held by him, and so long acquiesced in by others, not only evidence of the opinion of his guardian, founded doubtless upon a knowledge of the title at the time, and of his own opinion of the title, but we have, by their acquiescence, and by the ad-

mission of his co-heirs that they had no right, and the admission of the creditors, for the payment of whose debts these lands have now been sold to the demandants, evidence that William, their debtor, had no estate of inheritance in the premises which could descend to his heirs, or be liable for his debts. How else are we to account for their conduct in relation to these lands? That William possessed them was notorious. The demandants, upon the trial, proved that they had always been known by the name of the *Dudley lands*, which consisted of a large tract, situate in Connecticut and Massachusetts. If, then, the creditors of William Dudley had believed that he had been seised in fee of the lands, and that they were, therefore, liable for his debts, how is their conduct to be accounted for in suffering their lands to go into possession of Joseph, as his own, and continue there twenty-eight years before they took a single step to enforce the lien which they had upon the lands? When William died these creditors knew their rights, and no doubt knew his title papers might at that time have been produced to show what were the respective estates of William and Joseph in the premises. If, then, the creditors had not been conscious that William did not own the fee of the lands, they never would have remained so long quiet, seeing another enjoy the lands, and taking the rents and profits.

3. By the statute of Connecticut, no person has a right of entry into lands, but within fifteen years next after his right or title shall first descend or accrue, with the usual savings. It is contended, that

the right of entry of the demandants is not taken away in this case, because their right did not accrue until the conveyance to them, by the administrator, in 1817.

But the demandants claim a fee in these premises, under William Dudley. The fee held by William was the entire estate in the premises. If that estate has become extinct ; if the fee which was in him has been extinguished, either by those who had a right to extinguish it, or by the operation of law, operating through an adverse possession, then no person can any longer claim under it. If William had been living, and there had been an adverse possession against him, his right of entry would have been gone. His heirs, by the adverse possession, have lost their right of entry ; and every other person claiming under the same title is in the same situation. If the right of William and his heirs be gone, and taken away, can the act of an administrator resuscitate it ? Land is one thing, an estate in it is another. The lien of the creditor is upon William's *estate* in the land, and not upon the *land.* The lien is no inherent part of the soil always accompanying it. It is here a claim upon William's estate in it, which was a fee. Now, a fee is but one estate. Whether in the hands of William, or his heirs, or his grantees, or the grantees of his administrator, it is still but the same one estate. So long as that estate in the lands continue, the lien may possibly continue ; but when the estate is gone, the lien is gone.

It may possibly be denied, that the heirs at law of William could maintain an action, for the recovery of these lands, as they were tenants in common with

Joseph ; and it may be said, that the possession of one tenant in common is the possession of all. This, as a general principle, is admitted. But if one tenant in common enters into actual and exclusive possession of the land, taking the rents and profits to his own use, and openly assert his own exclusive property in the lands, and deny the title of any other, it will be considered as an adverse possession by him, and those claiming under him, and an ouster of the other claimants.[a] In this case the record states that Joseph did enter into the exclusive and actual possession of the premises taking the rents and profits, denying the title of his brothers and sisters, and keeping all others out of possession for 30 years. The heirs at law therefore of William could not have entered ; William if alive, could not enter ; and by what principle is it, that the grantee of an administrator, who can have no greater right than William, or his heirs at law, is to be held to have a right, which they would not have ?

In answer to this obvious question, it is said that William's estate was liable for his debts, and to be sold by his administrator for payment of them ; there is no limitation to the time in which letters of administration may be granted ; that the sale of the administrator was in pursuance of the provisions of the law of Connecticut, and therefore his grantee is entitled to the property. But let this argument be examined.

By the common law, where a man bound himself and his heirs, the obligee might sue the heir, and have

1822.

Ricard
v.
Williams.

a Cummings v. Weyman, 10 *Mass. Rep.* 464.

1822.

Ricard
v.
Williams.

execution of the land descended to the heir ; but if the heir aliened the land before action brought the alinee held the land free from any lien for the debt of the ancestor.[a] But by the law of Connecticut and the construction which has been repeatedly given to it, the creditor may follow the lands into the hands of the grantee of the heir at law, or devisee. But he can follow them only when the right of entry is not *tolled*. There are, besides, particular circumstances in this case, which show that the demandants cannot claim to be *bona fide* purchasers without notice of the facts of the case, but that they had full notice, and were actors in the transaction.

Lastly. The deed is void in itself, under the statute of Connecticutt, of 1747, against the sale of disputed titles.

Mr. *Pinkney*, contra, (1.) answered the objection made by the plaintiff in error, that in the present action, being a writ of entry, the demandants must show a seisin in deed ; by which (he supposed) was meant either an actual or constructive seisin. The writ in this case sets forth a plea, that the tenant render to the demandants " the quiet and peaceable seisin and possession of two certain tracts of land," &c. The count is, that " on or *about* the 20th day of December, 1817, they were well seised and possessed in their own right, as joint tenants in fee simple ;" and " that the tenant thereunto entered, and ejected, and *deforced* the demandants, and ever since has continued to *deforce and hold the demandants* out of

a Co. *Litt.* 102.

the possession," &c. And it is now contended, that they are bound to prove their seisin and possession as they have laid it; and not having done so, cannot recover.

The first answer to this objection is, that the bill of exceptions does not cover it. The first prayer is, that the Court should instruct the jury, that the demandants had not made out a *title* in themselves, nor in William Dudley. The second prayer is, for an instruction, that if the jury found that Joseph Dudley had been in possession of the lands for fifteen years, &c. that he had gained a complete title to the property. The third instruction asked for, is, that under the circumstances, &c. the jury might presume a grant from some owner of the land to William, &c. But the Court charged the jury, 1st. That the sale by the administrator, under an order of Court, was not within the statute regarding disputed titles, and was not therefore void. 2dly. That William Dudley, by mistaken constructions of the title of Governor Dudley, might have claimed an estate for life in the premises, and that such mistake would not operate to defeat his title by possession. 3dly. That the length of time, in which the estate had been occupied by William and Joseph Dudley, would bar any claims by the other children of Thomas Dudley, deceased; and that the jury were authorized to presume a grant, by them to their brother William; and, therefore, if the demandants recovered, they must recover the whole of the premises. And, lastly, that as against the creditors of William Dudley, neither Joseph Dudley, nor the plaintiff in error, had gained title by pos-

Ricard
v.
Williams.

session, and that the jury were not authorized to presume a grant to Joseph. It is obvious, then, that neither the prayers nor instructions cover this objection, which was not made in the Court below, and therefore no opinion was given upon it. The bill of exceptions does not profess to do more than deal with the *title*. It did not mean to state more than was sufficient to raise the questions which were raised in respect to that title.

The second answer to this objection is, that in Connecticut, the writ of entry is constantly used as an action of ejectment. The forms of actions, concerning real property, depend, in all the States, upon local usage, and no positive enactments of the legislature have been thought necessary to authorize a deviation, in this respect, from the rules of the common law. The writ of entry, in the present case, is not like an English writ of entry. If tried by the rules of English law, it could not stand a moment's examination. It does not regard and set forth the different *degrees*, as is required at common law : nor is it a writ of entry in the *post*, under the statute of Marlbridge, 52 Hen. III. c. 30., alleging that the defendant had not entry, until *after* the disseisin or deforcement of the original wrong doer, passing by all the intermediate degrees. In Connecticut, on the contrary, the defendant is always alleged to be the deforciant, which, if the fact were not so, would in England be fatal. Neither is the *time* of the deforcement or disseisin ever stated, either in the writ or count, at common law ; and in England, it would never be said that the seisin or disseisin was *about*

such a time. This, at least, may safely be asserted to be peculiar to the practice of Connecticut. So that it becomes manifest, that the peculiar properties of writs of entry cannot be applied to this action, as it exists by the local law and practice. It is used indiscriminately with the action of ejectment, and intended to try the right of possession, which, in that State, is the right of property.

2. The title of the demandants is under an administrator's sale, by order of Court. By the local law, there is no limitation to the granting letters of administration, by the mere lapse of time.[a] But even if there were, every question respecting it, and respecting the debts for which the lands were sold, has been decided by the competent Court, of peculiar and exclusive jurisdiction. This decision has been confirmed, in the last resort, by the Superior Court of the State, which is the only Court that has an appellate jurisdiction from the decrees of the Court of Probates. There can therefore be no objection now to the validity of these letters of administration, and the sale which was made under them, on the ground of the debts being antiquated. The appointed forum has settled these questions forever. If, then, the lands in question were, at the death of William Dudley, *his* lands in fee, the demandants have a good title, unless that title has been intercepted by an adverse possession or title, as is contended on the other side.

3. The next question then is upon William's title. His father died in possession, and William had exclusive possession by himself or guardian, receiving the rents and profits, from 1769 to 1785, claiming

a Wales v. Willard, 2 *Mass. Rep.* 120.

for himself only, to the exclusion of all the world. That this possession barred all *strangers* who, at the time, might have a right of entry, there cannot be a doubt: and the only possible question is, whether it barred his brethren and sisters.   His father had an estate, or he had not.   We may adopt the argument used on the other side for Joseph's protection.  If his father had no estate, then none descended to his children ; and William's entry was, of course, for his own benefit, and gained him, with the possession which followed, an estate by possession.  It is not directly found that his father had any estate which could descend.   It might be a naked possession ; and if it was, the entry of William, for his own exclusive benefit, he not being heir at law, was not a continuation of that possession for any person's benefit but his own.   He did not come to a regular succession as heir, nor were there any duties cast on him as heir by a regular descent.  He took in his own right, so as to keep out every body else.   It is true, indeed, that his mother is stated to have received a third of the rents and profits, but whether as dower or how, *non constat :* and any inference from such a fact cannot now be made in the absence of proof.   His brethren and sisters did not need to be barred, if no estate descended to them ; and William's possession was not their possession unless they had right.

But suppose an estate descended from Thomas, then William's exclusive possession, for himself, was sufficient to bar his brethren and sisters under the statute of Connecticut, and to gain him a title in fee.

To this it is objected that he claimed only a life estate, and, therefore, can gain no more. The answer is, he could not, by an adverse possession, gain an estate for life, or any estate less than a fee. A limited estate can be given only by contract of the parties, or act of law. Wrongful possession must give a fee or nothing. And it must be so in the nature of things, since there is nothing to limit it. The effect of possession is to bar actions against the possessor by those who are entitled to bring the actions. It does not operate like a grant, or any other mode of alienation, which may be circumscribed and limited. His claim of a life estate only did not create a remainder in favour of any other, so as to give to that other, for the first time, a right of action on his death. It did not contribute to exclude actions during his life. The person entitled might as well have sued, within the time of limitations, whether William claimed a life estate or not. The restricted claim changed nothing. It did not prevent his possession from being adversary, or make it less wrongful. It is the proprietor being out of possession, and another being in possession against his title, that produces the bar: and it cannot be material whether the adversary possession excludes the rightful possession upon one pretext or another. Contract only can prevent the effect, and then the possession is not adversary.

It is inconceivable that a wrongful possession can be restricted in its effects as a bar of limitation to a life estate, when the whole fee is actionable against

it. Cases may, indeed, be conceived in which it would produce a limited effect ; as, for example, if the heir should hold against tenant in dower, or by the curtesy. But there is nothing there to bar but the tenancy in dower or curtesy. If there was, the bar would extend to it. In our case, the whole fee is against the possession by wrong, and his possession is against the whole fee. His declarations, that he claimed only a life estate, did not give him a life estate. They gave him nothing ; and if they gave nothing, and secured nothing, how could they restrain to the prejudice of the legal effect of his possession ? Contract would have operated both ways. But the declarations of the party could not work the effect of contract one way, and there is no reason why it should the other. Whose rights did his declaration save ? It could save none, unless it took them out of the statute by *postponing* their right of action. Whoever had a right of action was told by the statute : sue! or you will be barred by the adversary possession after fifteen years. And unless the declarations of the possessor suspended the right of action, so as that the proprietor could not sue by reason of it, the statute reaches the case ; since, it bars all rights of action subsisting during the adversary possession, and not exerted within the time limited. A possession by a man claiming an estate tail, but having in fact no title, would bar all the proprietors having a right to sue. No matter what he claims ; if he claims adversely to every body during his possession of fifteen years, he excludes every body claiming title during the time, and every

body forbears to disturb him : and the statute says, he shall not afterwards be disturbed.

It is not here necessary to inquire, *why* William claimed only a life estate. That belongs to another branch of the subject. For the present purpose it is immaterial why he did so.

The doctrine of remitter will illustrate this head. *Littleton* says, (sec. 695.) " If a man be disseised, and the disseisor let the land to the disseisee by deed poll, or without deed, for term of years, by which the disseisee, entereth, this entry is a remitter to the disseisee. For in such case where the entry of a man is congeable, and a lease is made to him, albeit that he claimeth by words *in paiis*, that he hath estate, by force of such lease, or saith openly that he claimeth nothing in the land but by force of such lease, yet this is a remitter to him, for that such disclaimer *in paiis* is nothing to the purpose." So also it is laid down that a disseisor has a fee simple, and cannot have less.[a] And no claim can possibly alter or qualify it.[b]

The question then recurs, are the brothers and sisters barred by William's exclusive possession ?

It may be said they are not ; because, being coparceners with him, his possession is theirs. But a co-parcener or tenant in common may be barred by the statute of limitations, if the possession of his com-

a Co. Litt. 297. a.

b Co. Litt. s. 296. Co. Litt. 266. b. Mr. Butler, in his note to the last cited passage, says, " It is to be observed, that a disseisor by his disseisin acquires a tortious fee simple, *notr ith-standing at the time he makes the disseisin he claims a less estate.*"

Ricard
v.
Williams.

panions be adverse, or, in other words, amount to an actual ouster. So long as there is nothing adversary, the possession of one is the possession of all: but if one parcener usurp the whole, and hold out his companion, he is a deforciant, against whom a writ of entry will lie as well as a writ of partition. Here the co-parceners of William never had possession at all. His first entry was for himself; and perfectly exclusive. There never was any possession but his. The leading case on this subject was determined in Lord Mansfield's time,[a] and his doctrine was afterwards confirmed by Lord Kenyon.[b] An entry, and sole occupation of the whole, keeping the co-tenant out, in sufficient.[c] So, also, in a subsequent case, although it was strenuously contended at the bar that there ought to be a receipt of the rents, and an actual hindering of the co-tenant from entering, which did appear in the case, yet the Court held that "one tenant in common in possession, claiming the whole, and denying possession to the other, is evidence of an ouster."[d] So, also, Lord Hardwicke says, "In the the case of a fine and non-claim by tenant in common, it will bar his companion if he does not call the person to an account for the profits: for this has always been admitted to be evidence of an ouster."[e] And, again, it is said that, "although the entry of one co-tenant is the entry of both, yet if one enter

a Fisher and others v. Prosser, *Cowp*. 219.

b Peaceable v. Read, 1 *East*, 275.

c 5 *Burr*. 26. 3. 1 *Atk*. 493. 2 *Atk*. 32. 1 *L. Raym*.

d Doe v. Bird, 11 *East*, 51.

e 2 *Atk*. 632.

*claiming the whole*, this will be an entry adverse to his companion."[c]

As to the minority of William's brothers and sisters, and its effect to prevent the operation of the statute, it may be observed that they all arrived at age during his life. The statute had been running against them during minority, as to ten years, and when William died it was running against them for the other five. He had then the fee in progress against them, and nearly completed. It descended to his heirs, and if his brethren and sisters did not sue before the small remnant of the time expired, they are barred by the statute. It seems to be admitted, that they could not sue after that time. Their title was extinguished, beyond all doubt; and it was in progress to be extinguished at William's death.

4. As to the title of Joseph D. it is sought to be founded on the presumption of a grant, from somebody (not said whom) to William for life, with remainder to Joseph in fee or in tail. But presumptions may be rebutted by contrary presumptions. They depend on circumstances; and these must warrant the particular presumption, or at least not be inconsistent with it.[b] One of the grounds of presumption is the existence of a state of things which may most reasonably be accounted for by supposing the fact presumed. Here it must be founded on Joseph's possession, and on William's declaration, that he claim-

a 14 *Vin. Abr.* 512. *Pl.* 5. And in the margin. " The possession of one heir in gavelkind, claiming the whole, is adverse."

b *Phillips, Evid.* 119. 121. 2 *Saund.* 175. 1 *Taunt.* 288. 3 *East,* 290. 16 *East,* 583. 2 *Barnw. & Ald.* 791.

ed only a life estate, and that it would *descend* to Joseph. The state of the case, as it appears on the bill of exceptions, is defective; but it is easy to see, that all the parties must have claimed under the will of Governor Dudley, and upon the supposition of a continuing estate tail created by that will. This explains William's declarations.

It may indeed be said, that records, and acts of parliament, and grants of the crown, have all been presumed. But this has been after the lapse of ages, with imperfect records, and the presumption supported by parol evidence.[a] But it will be found in all these cases, that circumstances have been always shown to support the presumption, and that after a great length of time, all things which the case shows ought to have been done, will be presumed to have been done correctly. But in this country, where all the land titles are recorded, the presumption of a grant cannot be so easily indulged, and especially where the lands lie in two different States, and the property depends on the same title. If the record were lost in one, it would be found in the other. Such a presumption would repeal all the registry acts of both States, and would promote the interests only of the negligent, or the fraudulent.[b] It must be presumed, first, that the deed was made; and, secondly, that it had been lost. If the grant be supposed from Thomas, who had some estate of inheritance, it must have

a 1 *Inst.* 115. a. 12 *Rep.* 5. 1 *Ventr.* 257. *Cro. Jac.* 254. *Cowp.* 102. 2 *Strange,* 1129. 2 *Atk.* 19. 2 *T. R.* 154. 1 *Ves. jun.* 265.

b See Jackson v. Cary, 16 *Johns. Rep.* 302.

been made before Joseph was born, and when William was under fourteen years of age : not for a valuable consideration certainly ; and if a family donation or settlement, some traces of it would appear. Who preserved it for the infant William, or the unborn Joseph ? How could it have been preserved except on record ? If the presumption goes on the ground of acquiescence, that acquiescence is of recent commencement. Joseph's supposed remainder first took effect in 1786. The deed must have been in existence at that time, to justify the acquiescence. How happens it that no vestige of it now remains ? A presumption, which is to make a title, cannot stand under such circumstances. If it were merely to supply some defect arising from circumstances, congenial with the presumption, it would be different. William's claim of a life estate, connected with his declaration, that it would *descend* to his son Joseph, does not indicate a remainder in the latter ; and can only be satisfactorily explained by going up to Governor Dudley's will, which reconciles the conduct and language of all parties.

The creditors cannot be charged with acquiescence. They were strangers to the title. The family believed it to be an estate tail, and none of them administered. The statute of limitations is not a bar, for it allows an entry fifteen years after the title accrued. Possession is adverse only to those who have a right o entry. The creditors had no right of entry, and the demandants had none till the sale to them by the administrators. The estate of the creditors was merely potential. Immediately on the sale, the

purchaser was in as by the intestate.   It is well set-
tled by the local decisions that "no seisin of the
heir, of his alienee, or his disseisor, can defeat the
naked power of the administrator to sell on license."[a]
And at common law, where " A. devises lands to be
sold by his executors ; A. dies seised ; the heirs
of A. or a disseisor enters, and the heir or disseisor
makes a feoffment to B., and B. dies seised, and his
heir is in by descent.   Yet the executors may enter
and sell : for a descent takes away *rights of entry*;
but not titles or *powers*, as entry for condition bro-
ken, for mortmain, &c.   Neither does it take away in
case of devisee or patentee of land, where an abator
enters, for they have no other remedy.   And execu-
tors have only a power ; and when they sell, the ven-
dee is in by the will paramount to the descent cast."[b]

The entry of Joseph was consistent with the title
of the creditors ; and that shall not be taken to be
unlawful, which by possibility may be considered as
lawful.[c]   He had a right to enter, and his possession
could not be adverse to the creditors.   They might
elect to consider him as a trustee for them.[d]   He was
heir ; he took possession as heir, and his claim is re-
concilable with that of the creditors.   He took it
charged with the lien.   It was a statuteable lien
which he could not defeat by his wrong.   He was a
trustee, and could not bar the trust.   The statute of

a 4 *Mass. Rep.* 359.

b *Jenk. Cent.* 184. *Ca.* 75. *Bro. Abr. Devise. Pl.* 36. *Litt.*
1. 381. 392. 169. *Sir W. Jones*, 352.

c 10 *East*, 583. *Adams, Eject.* 50.

d 1 *Burr.* 60. 12.

limitations only runs from the commencement of a clearly adverse possession.[a]  If the statute acted against those having no present right, the argument we are considering would be conclusive.  But, though the tenant for life be barred, the remainder man cannot, because he has no right of action.

But it is said that Joseph's possession barred his co-parceners, represented by William ; and as William's estate is barred, the lien which attached to it is gone of course.  The answer is, that the bar may exist for one purpose, and against some parties, and not for every purpose, and against all parties.  Joseph still retains his character of *heir,* and by barring the other heirs, the claim of the creditors is not barred.  Being heir, he has kept out his companions by deforcing them ; but being heir, he cannot destroy the statuteable lien by his own wrong, for his own benefit.  He has ceased to be liable to his co-heirs, but not to the creditors.  He has acquired the whole fee as against his co-parceners, because they had a right of action.  He has not defeated the estate of the creditors, because they had no such right.  In *Stanford's case*[b] it was held, that if the lessee of a future term dies, and the prior term expires, then the lessor enters, and levies a fine, and five years pass, and then B. takes administration to the lessee ; he shall have five years afterwards : *for no one had title till administration.*

a  3 *Wheat. Rep.* 224.
b  Cited in *Cro. Jac.* 61. See also *Leon.* 119.

Allusion has been made to the doctrine of the common law, by which the heir is liable for the specialty debts of his ancestor, so long as the lands remain in his hands, but no longer.    It should be remembered, however, that the statute has remedied that evil ; that the lands are now subject to the payment of the bond debts of the ancestors, into whose ever hands they may come.   The maxim of legislative policy is, *caveat emptor.*   So, too, in equity, the rule is, the vendee under a power shall see to the application of the money.   And under the local law of Massachusetts and Connecticut, the cases before cited show that the alienation of the land will not discharge the lien.   It is true, that the lapse of 20 years will, under certain circumstances, discharge that lien of a judgment.   But how does it discharge it ?  By presuming payment and satisfaction of the judgment ;  but that is not the case here.   The debts cannot be presumed to be satisfied, since the report of the commissioners to the Court of Probates shows them to be still in existence.

Lastly.   The objection as to the sale of the demandants being void as against the statute to prevent the selling of disputed titles, has been sufficiently answered by what has been said respecting the authority of administrators and executors, to sell lands in the possession of heirs, their alienees or disseisors, or the alienees of the latter.   This is a sale by authority of law ; nor is it within the words of the statute, which speaks only of " sales by a person *disseised or ousted of the possession* of lands by the entry, possession, and enjoyment of any other per-

son." Here was no disseisin or ouster of the credi-
tors of the administrator. ·

Mr. *Webster*, for the plaintiff in error, in reply,
stated, that there were two questions for considera-
tion. 1. Whether William D. was shown to have
been seised of such estate in the lands, that they be-
came chargeable with his debts at his decease?
2. Supposing him to have died seised of an estate
thus chargeable, are the demandants entitled to re-
cover against the adversary claim of Joseph D. and
his grantees ?

1. It is not proved that William D. had a fee in
the lands. He entered into possession on the death
of his father, Thomas, in 1769. But *non constat*
what estate the latter held. The will of governor
Dudley may be wholly laid out of the case, inasmuch
as neither party attempted at the trial to deduce title
under that will. William, being a minor, and hav-
ing brothers and sisters younger than himself, then
living, entered into possession of the lands by his
guardian : and there being no devise in fee to him
from his father in proof, the legal presumption is, that
he entered, either as having an estate of his own, in
the lands, commencing on his father's death, or as
one of the co-heirs of his father. But it is apparent,
that he did not enter as a co-heir, because he enter-
ed, claiming an exclusive right, took an exclusive pos-
session, and held his brothers and sisters out. He claim-
ed, however, an estate for life only, and the same proof,
which shows the possession, shows also under what title
that possession was held. This is not inconsistent with

the general doctrine, that a disseisor cannot qualify his own wrong. For it is first to be proved, that he was a disseisor. The presumption ought to be, that he entered rightfully, having such title as he pretended to have. It is clear, that the declarations of a person in possession of land as to his title, are admissible against him. If he were tenant for life, then he had a peculiar limited estate acquired by purchase, and perfectly consistent with Joseph's title in the fee. That he held such a limited estate is shown by his own conduct and declarations, and by the conduct of his brothers and sisters, who never disturbed his possession. On the death of William, in 1786, Joseph, being then a minor, and having also brothers and sisters, entered upon the lands, taking the whole rents and profits, holding his brothers and sisters out of possession, and claiming the lands exclusively as his own, and finally conveyed them as his property to those under whom the tenant in the present action claimed. He did not therefore enter as a co-heir of his father, for he excluded his brothers and sisters. Nor did he enter as tenant for life, for he claimed the whole fee, and disposed of it. So that from 1769, to the commencement of the present suit, a period of 50 years, these lands have been possessed and enjoyed in a manner strictly conformable to the supposition, that William had an estate for life in the premises, with remainder to his son Joseph in fee. Now, as neither party produced any documentary evidence of title, but both parties rested on the presumption of grants arising from possession, such

a grant, and such a grant only, ought to have been presumed, as should conform to the whole length of possession. It ought to have been left to the jury, to presume a grant to William for life, with remainder to Joseph in fee, because the possession proved such a grant, if it proved any whatsoever. Why should the presumption arise from any one part of the possession, rather than from the whole? And especially, how can a grant to William in fee be presumed from his possession, when he pretended to have an estate for life only? His declarations were not contrary to his possession, but conformable to it: and both his possession and his declarations, and all his conduct, are strictly conformable to the supposition of a remainder in fee in Joseph. The jury ought to have been directed to take all these circumstances into consideration, and to presume such a grant as would support the possession throughout its whole duration.

There is an insurmountable difficulty in any other view of the case. The learned judge below, going upon the supposition, that Thomas D. died possessor of an estate in fee, and that William entered as co-heir to that estate, instructed the jury that they might presume a grant to him, by his brothers and sisters, of their portions of the inheritance. But this presumption could not be made, because, when he entered, claiming to hold them out, and down to the time of his death, in 1786, some of them were within the saving of the statute of limitations: and it is very clear that, where the statute would apply, any length of time, short of the statute period, can never warrant a presumption; for that would be to presume against

the statute.[a]   If there were in fact any grant from the brothers and sisters of William, it is more reasonable to suppose such grant made to Joseph.   If we admit, then, that the same length of possession by a parcener, would bar one of his co-parceners as would bar others, still William, having entered in 1769, would not bar any of his co-heirs, by possession, until 1784 ; but in the latter year the greater number of his brothers and sisters were still either minors, or within the five years' saving of the statute in favour of minors, and to be allowed after they came of full age.   So that there is no ground whatever, on which it is possible to presume a grant to William from his brothers and sisters.

There is then a double difficulty in supporting the instruction, which was given to the jury. 1st Because they were told, that they might presume a grant to William in fee, when the whole possession, taken together, was shown to be incompatible with the existence of such a grant.   And, 2dly. Because they were instructed they might presume a grant to William, from his brothers and sisters, in a case in which the statute of limitations would apply, if they had not been within its exception as minors.   The jury were farther instructed, that William might have claimed an estate for life in the premises by mistake, and that such mistake ought not to defeat his title by possession.   I agree, that if it appeared, that he had an estate in fee, his mistake ought not to prejudice him ; but that not appearing, there is no evidence of

a Cowp. 114.

any mistake whatever. All the evidence, which shows that he had any title at all, shows such title to be only to an estate for life, and there is no ground to presume any mistake.

2. The remaining general question is, whether, supposing William D. to have died possessed of an estate in fee, the demandants are entitled to recover in the present action?

Here has existed a possession of 33 years in Joseph, and those claiming under him. The judge instructed the jury, that, as against the creditors of William, supposing him to have died possessed of the land in fee, neither Joseph, nor those claiming under him, had gained title by possession. There can be no doubt this ought to be considered an *adverse* possession. Every possession is adverse where there are circumstances to destroy a presumption, that the defendant is in under the plaintiff's title.[a] There is no ground to presume that Joseph entered into possession, intending to hold subject to the incumbrance of William's debts: especially, as there were strong reasons to suppose he entered claiming a title in himself, not derived from his father. It seems clear, that this length of possession would have barred William Dudley himself, if he had lived. If he had conveyed on the day of his death, it would have barred his grantee. If he had devised the lands, it would have barred the devisee. If he had mortgaged, it would have barred the mortgagee. If he had mortgaged for the payment of this very debt, the creditor

[a] Jackson v. Todd, 2. *Caines' Rep.* 183.

and mortgagee would have been long since barred by the adverse possession of Joseph, and those claiming under him. The doctrine contended for on the other side goes to give more permanency to a general unknown lien, than to a well known and specific lien. A mortgage deed is registered, and may be known: but where are debts registered? How is a stranger to know any thing of them? In the present case, a creditor, twenty-eight years after the death of his debtor, causes letters of administration of his estate to be taken out, proves his debt, or gets it confessed, and attempts to enforce his general lien as creditor on the debtor's land, after this lapse of time, against *bona fide* purchasers buying without notice of the claim. To permit this would be opposed to justice and equity, and to the whole policy of the law. If twenty-eight years will not bar such a claim, what lapse of time will bar it? or is it to be perpetual? The general mischiefs of such a doctrine are obvious. It would disturb titles to a very great extent. No man could buy with any security. The defendant in this case has, of course, no means of contesting the existence or amount of the debt. That question is settled between other parties; and although from lapse of time, all debts would be presumed to be paid, yet, if the administrator, who in such cases is generally the agent of the creditor, desires to admit the debt, the tenant of the land cannot dispute it. This renders it absolutely indispensable, for the security and safety of purchasers, that liens of this nature should be enforced promptly, or in reasonable time after the debtor's decease. No system could answer the com-

mon purposes of justice, which should allow a cre- ditor to come on the land for his debt, at any time, and in whosoever hands he might find it. The courts of Massachusetts have expressed the opinion, that a creditor, by unreasonable neglect and delay, in pur- suing his remedy, should be deemed to waive his lien on the land ; and have very clearly intimated that in ascertaining what neglect ought to be consider- ed as unreasonable, they should be governed by the analogy of the statute of limitations.[a] They have also decided that the estate should not be sold, if the creditor's demand be barred by the act limiting actions against administrators and executors ; and that if the administrator pay the debt himself, and then lie by till it would have been barred, he shall not indemnify himself by charging it on the land.[b]

In this case there is great reason for following the analogy of the statute of limitations. The words of the Connecticut statute are the same as those of the English, except as to the number of years. " No person shall make entry into lands, &c., but within fifteen years next after his right or title shall descend or accrue." This is descriptive of the title under which he enters, and does not regard the time of his own accession to that title. In the case of *Beach* v. *Catlin*,[c] it would seem to be intimated by one of the

a Gore v. Brazer, 3 *Mass. Rep.* 542. Wyman v. Brigden, 4 *Mass. Rep.* 150.

b Scott v. Hancock, 13 *Mass. Rep.* 162. Allen v. Strong, 15 *Mass Rep.* 58.

c 4 *Day's Rep.* 284.

learned judges, that a judgment creditor, coming into the land by extending his judgment on it, is in under a *new* title, and that, as to him, the statute runs only from the time of the execution of the writ. That case is understood to have been relied upon as applicable to this, in the Court below. It would be difficult, I think, to support it; for supposing that a judgment can be extended on lands, of which the judgment debtor is not in possession, but which are in possession of another holding adversely to him, it would seem that he could derive no higher right, or better title than his debtor had, and must hold under him. This would not be the accruing of a new title in the judgment creditor, but merely a transfer or devolution of an existing title. It is no more a new title than if he had acquired it by deed of conveyance. Perhaps it would not be going too far, in the case now before the Court, to hold the demandants within the words of the statute, on a liberal construction, as having a right to enter, being creditors, on the death of their debtor, insolvent; for although the right was not perfect, they could make it perfect whenever they pleased. They could as well have caused letters of administration to be taken out in 1784, as in 1814. But because this may be, I contend the present case is within the principle of the cases which have been decided by the analogy of the statute of limitations, and on grounds of public policy. It is well known that many cases which are not within the letter of the statute, are construed to be within it by analogy. The statute, for instance, does not apply, in terms, to proceedings in equity;

but they are affected by analogy.[a]  Where a party
has an equitable lien, if he be guilty of such negli-
gence as would bar him at law, he shall be barred
in equity.   In relation to the whole class of incorpo-
real hereditaments, whether the cases arise in equi-
ty, or at law, the bar is furnished, not by the terms
of the statute of limitations, but by its analogy.[b]
So is the law, also, with regard to an equity of re-
demption.   There is no right to enter.   It is but a
mere equitable interest in the land ; it is not, there-
fore, within the terms of the statute ; but yet it is
barred by the lapse of time prescribed by the statute
for other cases.[c]   Rent, also, a highly favoured lien,
will be presumed to be discharged by the lapse of
the statute period.[d]

In short, it will be difficult to find a case in which
a lien upon land, which may be asserted and en-
forced at any time, has been established, after the
expiration of the time allowed to make title to the
land itself.   In most of these cases, the ends of jus-
tice, and the policy of the law, are attained by pre-
suming a grant.   This presumption is made from
principles of public policy, and the necessity of the
case.   It is for the furtherance of justice, and for the
sake of peace : it is founded in this, that whatever
has long existed, and has been acquiesced in by

a  1 *Scho. & Lefr.* 413.

b  2 *Saund.* 175. note *a.*   1 *Bos. & Pull.* 401.   3 *East*, 294,
4 *Day's Rep.* 244.

c  1 *Powell Mort.* 408.

d  *Bailey* v. *Jackson*, 16 *Johns. Rep.* 210.

those who had an interest to disturb it, had, proba-
bly a lawful beginning. It is not to be supposed
that a man would suffer another to obstruct the en-
joyment of his right without complaint, and an effort
to obtain redress. The presumption is not to be
made out, by weighing minutely the evidence of
particular facts and probabilities. This would be
proof, not presumption.

Legal presumption is resorted to where there is
no particular proof, and because there can be no
particular proof; the question, in such cases, is not
to be decided by personal belief or disbelief. The
grant presumed is taken to exist as a fact, in contem-
plation of law.[a]

Whatever is possible may be presumed, in order
to establish long continued possessions. Royal
charters, acts of parliament, grants from the state,
common recoveries, and private conveyances of all
descriptions.[b] Some of the questions now presented
here were fully discussed in the Supreme Court of
Connecticut, in a case in which the same parties
were plaintiffs, as in this, and which respected the
same title : and I refer particularly to the judgment
pronounced in that case by the chief justice.[c] The
ground is, that by a neglect to assert the claim, and
enforce the lien for a length of time equal to that
prescribed by the statute to bar a title to the land
itself, the creditor shall be presumed to have waived

a  2 Bos. & Pull. 206.    12 Ves. 261.
b  12 Ves. 374.    2 Hen. & Munf. 370.    2 T. R. 159.
c  Sumner v. Child, 2 Conn. Rep. 607.

or surrendered the lien; that this presumption stands on principles of public policy, and furnishes a complete bar to the demandants' recovery.

1822.
Ricard
v.
Williams.

Mr. Justice STORY delivered the opinion of the Court.

Feb. 28th.

The principal questions which have arisen, and have been argued here, upon the instructions given by the Circuit Court, and to which alone the Court deem it necessary to direct their attention, are, *First*, whether upon the facts stated, a legal presumption exists, that William Dudley died seised of an estate of inheritance in the demanded premises; and, if so, *Secondly*, whether an exclusive possession of the demanded premises, by Joseph Dudley and his grantees, after the death of William, under an adversary claim, for thirty years, is a bar to the entry and title of the demandants under the administration sale.

It is to be considered, that no paper title, of any sort, is shown in William Dudley, or his son Joseph. Their title, whatever it may be, rests upon possession; and the nature and extent of that possession must be judged of by the acts and circumstances which accompany it, and qualify, explain, or control it. Undoubtedly, if a person be found in possession of land, claiming it as his own, in fee, it is *prima facie* evidence of his ownership, and seisin of the inheritance. But, it is not the possession alone, but the possession accompanied with the claim of the fee, that gives this effect, by construction of law, to the acts of the party. Possession, *per se*, eviden-

Possession,
how evidence
of ownership.

1822.

Ricard
v.
Williams.

ces no more than the mere fact of present occupation, by right; for the law will not presume a wrong; and that possession is just as consistent with a present interest, under a lease for years or for life, as in fee. From the very nature of the case, therefore, it must depend upon the collateral circumstances, what is the quality and extent of the interest claimed by the party; and to that extent, and that only, will the presumption of law go in his favour. And the declarations of the party, while in possession, equally with his acts, must be good evidence for this purpose. If he claims only an estate for life, and that is consistent with his possession, the law will not, upon the mere fact of possession, adjudge him to be in under a higher right, or a larger estate. If, indeed, the party be in under title, and by mistake of law, he supposes himself possessed of a less estate in the land than really belongs to him, the law will adjudge him in possession of, and remit him to, his full right and title. For a mistake of law shall not, in such case, prejudice the right of the party, and his possession, therefore, must be held co-extensive with his right. This is the doctrine in *Littleton, (s. 695.)* cited at the bar; and better authority could not be given, if, indeed, so obvious a principle of justice required any authority to support it. But there the party establishes a *title* in point of law greater than his claim; whereas, in the case now supposed, the party establishes nothing independent of his possession, and that qualified by his own acts and declarations. This is the distinction between

the cases, and accounts at once for the different principles of law applicable to them.

It has also been argued at the bar, that a person who commits a disseisin cannot qualify his own wrong, but must be considered as a disseisor in fee. This is generally true ; but it is a rule introduced for the benefit of the disseisee, for the sake of electing his remedy. For if a man enter into possession, under a supposition of a lawful limited right, as under a lease, which turns out to be void, or as a special occupant, where he is not entitled so to claim, if he be a disseisor at all, it is only at the election of the disseisee.[a] There is nothing in the law which prevents the disseisee from considering such a person as a mere trespasser, at his election ; or which makes such an entry, under mistake for a limited estate, a disseisin in fee absolutely, and, at all events, so that a descent cast would toll the entry of the disseisee. But, were it otherwise, in order to apply the doctrine at all, it must appear, that the party found in possession entered without right, and was, in fact, a disseisor ; for if his entry were congeable, or his possession lawful, his entry and possession will be considered as limited by his right. For the law will never construe a possession tortious unless from necessity. On the other hand, it will consider every possession lawful, the commencement and continuance of which, is not proved to be wrongful. And this upon the plain principle, that every man shall be presumed to act in obedience to his duty,

1822.

Ricard
v.
Williams.

Limitation of the general rule that a disseisor cannot qualify his own wrong.

a Com. Dig. Seisin. F. 2. & F. 3 . 1 Roll. Abrid. 662. l. 45. Id. 661. l. 45.

until the contrary appears. When, therefore, a naked possession is in proof, unaccompanied by evidence, as to its origin, it will be deemed lawful, and co-extensive with the right set up by the party. If the party, claim only a limited estate, and not a fee, the law will not, contrary to his intentions, enlarge it to a fee. And it is only when the party is proved to be in by disseisin, that the law will construe it a disseisin of the fee, and abridge the party of his right, to qualify his wrong.

Now, in the case at bar, it is not proved of what estate Thomas Dudley died seised in the premises. His possession does not appear to have been accompanied with any claim of right to the inheritance. It might have been an estate for life only, and as such, have had a lawful commencement. If it were intended to be argued, that he had a fee in the premises, it should have been established by competent proof, that he was in possession, claiming a fee by right, or by wrong. No such fact appears. The only fact, leading even to a slight presumption of that nature, is, that his widow took one third of the rents and profits during her life. But whether this was under a claim of dower, or any other right, is not proved. The circumstance is equivocal in its character, and is unexplained ; and the inference to be deduced from it, of a descendible estate in her husband, is rebutted by the fact, that immediately on his death, his son William entered into the premises, claiming a life estate, and held them during his life, as his own, without any claim on the part of the co-heirs of his father, to share in the estate. There is then nothing in the case, from which it can be ju-

dicially inferred, that Thomas was ever seised of an estate of inheritance in the premises, and, of course, none of a descent from him to his heirs.

Then, as to the estate of his son William in the premises. It is argued, that William had an estate in fee, by right or by wrong. That if his entry, either in person, or by his guardian, was without right, it was a disseisin, and invested him with a wrongful estate in fee. If with right, then it must have been as a co-heir of his father, and a grant ought to be presumed from the other co-heirs to him, releasing their title, and confirming his.

The doctrine, as to presumptions of grants, has been gone into largely, on the argument, and the general correctness of the reasoning is not denied. There is no difference in the doctrine, whether the grant relate to corporeal or incorporeal hereditaments. A grant of land may as well be presumed, as a grant of a fishery, or of common, or of a way. Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration, that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession. They may, therefore, be encountered and rebutted by contrary presumptions; and can never fairly arise where all the circumstances are perfectly consistent with the non-existence of a grant:

*Presumption of grants, grounds on which it rests, and to what applicable.*

1822.

Ricard
v.
Williams.

Presumption of
grants, how far
limited to peri-
ods analogous
to those of the
statute of limi-
tations.

*A fortiori,* they cannot arise where the claim is of such a nature as is at variance with the supposition of a grant. In general, it is the policy of courts of law, to limit the presumption of grants to periods analogous to those of the statute of limitations, in cases where the statute does not apply. But where the statute applies, it constitutes, ordinarily, a sufficient title or defence, independently of any presumption of a grant, and, therefore, it is not generally resorted to. But if the circumstances of the case justify it, a presumption of a grant may as well be made in the one case as in the other ; and where the other circumstances are very cogent and full, there is no absolute bar against the presumption of a grant, within a period short of the statute of limitations.[a]

If we apply the doctrines here asserted to the case at bar, we may ask, in the first place, what ground there is to presume any grant of the premises to William Dudley, and if any, what was the quantity or quality of his estate? It has been already stated that there is no sufficient proof that his father died seised of a descendible estate in the premises ; and if so, the entry of William by his guardian, or in person, cannot be deemed to have been under colour of title as heir ; and in point of fact he never asserted any such title. For the same reason, no estate can be presumed to have descended to his co-heirs; and if so, the very foundation fails upon which the presumption of a grant from them to William can be built ; for if they had no title, and asserted no title, there is no reason

---

a See *Phillips on Evidence,* ch. 7. s. 2. p. 126. *Foley* v. *Wilson,* 11 *East,* 56.

to presume that he or they sought to make or receive an inoperative conveyance. There is no pretence of any presumption of a grant in fee from any other person to William ; and as there is no evidence of any connexion with the will of Governor Dudley, or of any claim of title under it by William, there does not seem any room to presume that he was in under that will, upon mistaken constructions of his title derived from it. There is this further difficulty in presuming a grant from the co-heirs to William, that at the time of his own entry, as well as that of his guardian, all of them were under age, and incapable of making a valid conveyance. During this period, therefore, no such conveyance can be presumed : and yet William, during all this period, claimed an exclusive right, and had an exclusive possession of the whole to his own use ; and his subsequent possession was but a continuation of the same claim without any interference on the part of the co-heirs. In point of fact the youngest brother arrived at age about the time of William's death ; and as to two others of the co-heirs, the statute of limitations of Connecticut, as to rights of entry, would not then run against them. The presumption of a grant from them is therefore in this view, also, affected with an intrinsic infirmity.

In addition to all this, William never claimed any estate in fee in the premises. His declaration uniformly was, that he had a life estate only, and that upon his death they would descend to his son Joseph. Of the competency of this evidence to explain the nature of his possession and title, no doubt can reasonably be entertained. His title being evidenced

1822.

Ricard
v.
Williams.

only by possession, it must be limited in its extent to the claim which he asserted. If, indeed, it had appeared that he was in under a written title which gave him a larger estate, his mistake of the law could not prejudice him; but his seisin would be coextensive with, and a remitter to that title. But there is no evidence of any written title, or of any mistake of law in the construction of it. For aught that appears, William's estate was exactly what he claimed, a life estate only, and the inheritance belonged to his son Joseph. It is material also to observe, that the acts of the parties, and the possession of the estates during the period of nearly fifty years, are in conformity with this supposition, and at war with any other. Why should William's brothers and sisters have acquiesced in his exclusive possession during his whole life, if the inheritance descended from their father? Why should Joseph's brothers and sisters have acquiesced in his exclusive possession during a period of twenty-five years without claim, if their father William was seised of the inheritance? Why should the guardians of William and Joseph have successively entered into the premises, claiming the whole in right of their respective wards, if their title was not deemed clearly and indisputably an exclusive title, or if they were in by descent under the title of their fathers? If, indeed, a presumption of a grant is to be made, it should be of a grant conforming to the declarations and acts of possession of the parties during the whole period: and if any grant is to be presumed from the facts of this case, it is a grant of a particular estate to William, with a remainder of the

inheritance to Joseph, or in the most favourable view of an estate tail to William, upon whose death the estate would descend to Joseph, as his eldest son, *per formam doni.* If Thomas, the grand father, were proved to have been the owner of the fee, there is nothing in the other circumstances which forbids the presumption of such a grant from him ; but as the cause now stands, it may as well have been derived from some other ancestor, or from a stranger. It is therefore the opinion of this Court, that the Circuit Court erred in directing the jury that William, by mistaken constructions of the will of Governor Dudley, might have claimed an estate for life in the premises, and that such mistake would not operate to defeat his title by possession, for there was no evidence that William ever claimed under that will ; and also erred in instructing the jury that they were authorized to presume a grant by the children of Thomas to William. The compromise entered into by Joseph with two of his brothers is not thought to change the posture of the case, because that compromise was made with an explicit denial of their right ; and is therefore to be considered as an agreement for a family peace.

The other question in the cause is of great importance, and if decided one way will probably put an end to further controversy. It has been very fully and ably argued at the bar, and does not, from any thing before us, appear to have received a final adjudication in the State courts of Connecticut. It must therefore be examined and decided upon principle. By the laws of Connecticut, (as has been al-

1822.

Ricard
v.
Williams.

ready stated,) the real estate of an intestate is liable to be sold for the payment of debts, where there is a deficiency of personal estate. The administrator in virtue of his general authority, has no right to meddle with the real estate : but derives this special authority from the order of the Court of Probates, which possesses jurisdiction to direct a sale, upon a proper application, and proof of the deficiency of the personal assets. This power or trust, call it which you please, when granted or ordered, is not understood to convey any estate to the administrator in the lands of the intestate. He derives simply an authority to sell from the Court, and upon the sale makes a conveyance to the purchaser ; and the estate passes to the purchaser upon his entry into the land by operation of law, so that he is in under the estate of the intestate. As long as an administration legally subsists, or may be legally granted, this power over the land may be exercised, if the land remains in possession of the heirs ; and it is not defeated simply by an alienation or disseisin of the heirs.[a]  By analogy, also, to other cases of a like nature, at the common law, as, for instance, a power given by a will to executors to sell an estate for payment of debts, it may be true that a descent cast will not toll an entry, for there is a distinction between a right of entry, and a mere power.[b]  The former is in general barred by a descent cast ; but the

_a_ Drinkwater v. Drinkwater, 4 _Mass. Rep._ 354. 359. _Jenk. Cent._ 184. _pl._ 85.

_b_ _Littleton, s._ 169. _Jenk. Cent._ 184. _pl._ 85. _Brooke's Abridg. Devise, pl._ 36. _Litt. s._ 391. _Co. Litt._ 240.

latter is not. On this, however, it is not necessary to express any opinion.

It does not appear that at the time of granting the administration on this estate, any statuteable limitation of the period within which an original administration might be granted, existed in Connecticut, though a limitation generally to seven years after the death of the party has been since introduced.[a] And the present administration, though granted after the lapse of 28 years from the death of William Dudley, must be considered as valid, it having been allowed by a Court of competent and exclusive jurisdiction, whose decision we are not at liberty to review.

Still, however, the question recurs, whether a power of sale, thus derived under the law, and not from the act of the party, is to be considered as a perpetual lien on the land, of which the intestate died seised, and capable of being called into life at any distance of time, and under any circumstances, whatever may be the mesne conveyances, disseisins, or descents, which may have taken place. If it be of such a nature, great public mischiefs must inevitably occur, and many innocent purchasers, fortified as their possession may be, by length of time, against all interests in the land, may yet be the victims of a secret lien, or power, which could not be forseen or guarded against, and which may spring upon their titles when the original parties to the transactions are

1822.

Ricard
v.
Williams.

The power of the administrator to sell real estate for the payment of debts must be exercised within a reasonable time.

a Statutes of Connecticut. Revision of 1821. tit. 32. Estates 33.

buried in the grave.    The principles of justice would
seem to require, that the law should administer its
benefits to those who are vigilant in exercising their
rights, and not to those who sleep over them.    It is
always in the power of creditors to compel an admi-
nistration to be taken upon an estate by application to
a Court of Probates; and if the next of kin decline
the office, it is competent for the Court to appoint
any other suitable person.    So that, if creditors do
not choose to act, the loss or injury ought rather
to fall on them, than on those who are meritori-
ous purchasers without the means of knowledge to
guard them against mistake.    A power to sell the
estate for payment of debts being created by the
law, ought not to be so construed as to work mis-
chiefs against the intent of the law.    It ought to be
exercised within a reasonable time after the death of
the intestate : and gross neglect or delay on the part
of the creditors for an unreasonable time, ought to
be held to be a waiver or extinguishment of it.    This
appears to be the doctrine in Massachusetts;[a] whose
laws on this subject are like those of Connecticut,
and is so just in itself, that unless prevented by au-
thority, we should not hesitate to adopt it.    There
is no decision in Connecticut, which, to our know-
ledge, controverts this doctrine ; and it stands sup-
ported by the very learned opinion of her late Chief
Justice in the case of *Sumner* v. *Childs.*[b]    There

a Gore v. Brazer, 3 *Mass. Rep.* 523. 542.    Wyman v. Brig-
den, 4 *Mass. Rep.* 150. 155.

b 2 *Conn. Rep.* 607.

are many cases where indisputable liens on land may be lost by lapse of time, and transmutation of the property. And even the rights of mortgagors to redeem, and of mortgagees to enforce payment out of the land, may be lost by presumptions, or laches arising from time.

1822.

Ricard
v.
Williams.

What then is to be deemed a reasonable time for the exercise of this power to sell? It has been argued that the case of such a power is within the purview of the statute of limitations of Connecticut; and if not that the reasonable time for its exercise is to be fixed by analogy to that statute. The statute provides that no person shall, at any time thereafter, make entry into any lands or tenements, but within fifteen years next after his right or title shall first descend or accrue to the same, with a saving in favour of infants, *femes covert*, &c. of five years after the removal of the disability.[a] The language of the statute would seem to apply merely to rights of entry; but it has been the uniform construction of the Courts of the State, that it also takes away all rights of action, and, therefore, bars all real actions after that period.[b] Now, the argument at the bar is, that the words right or title first accrued, refer solely to the commencement of the original title under which the party claims, and not to his own accession to the title. But it appears to us, that this

This reasonable time is to be fixed by analogy to the statute of limitations.

a See the statute in *Revised Laws of Conn. tit.* 59. *sec.* 1. *p.* 309. 1 *Swift's System*, 335.

b 1 *Swift's System*, 335, 336. Sumner v. Child, 2 *Conn. Rep.* 607. 615.

construction of the statute cannot be maintained. The title against which the statute runs, is a present right of entry; and it is admitted, that when once it so begins to run, no devolution of the same title, and no supervening disability, will stop its operation. When, therefore, it speaks of a right or title first accrued, it means a new right or title first accruing to the party, and not the transfer of an old title. Against titles, *in esse*, at the time of the adverse possession, the statute was intended to run; but titles which should afterwards come *in esse*, were not within the provision of the statute, because they could not be enforced within the period, and it would be unjust to bar future rights in respect to which there could, by no possibility, be an imputation of laches. And such has been the uniform construction of all the statutes which contain a clause of this nature. *Stanford's case*, cited at the bar, and referred to in *Cro. Jac.* 61., is directly in point; and it would be easy to multiply instances under the statute of limitations, and the statute of fines, to the same effect.[a] If, indeed, the construction were otherwise, it would not help the present case, for the right of entry of the purchaser did not accrue until after the conveyance to him, and if he should then be deemed in under the estate of the intestate, and in privity of title, it would be a new right growing out of the exercise of a power conferred by law, and no more barred than a right of entry upon an extent after a fine le-

---

a *Bac. Abr. Limitations*, B.  *Bac. Abr. Fines and Recoveries*, F.  *Comyn's Dig. Fine*, K. 2.

vied, and five years past, where the judgment was obtained before the fine.[a]

But we do think it is a case clearly within the same equity as those which are governed by the statute of limitations; and that by analogy to the cases where a limitation has been applied to other rights and equities not within the statute, the reasonable time within which the power should be exercised, ought to be limited to the same period which regulates rights of entry. It would be strange, indeed, that when the estate of the heirs in the land, which is but a continuation of the estate of the intestate, is extinguished by the statute, the estate should still be considered as a subsisting estate of the intestate himself. That the administrator should possess a power over the property which the intestate could not possess if living; and that a lien created by operation of law should have a more permanent duration of efficacy, than if created by the express act of the party. The convenience of mankind, the public policy of protecting innocent purchasers, and the repose of titles honestly acquired, require some limitation upon powers of this nature, and we know of none more just and equitable than this, that when the right of entry to the land is gone, or the estate is gone by an adverse possession from those who held as heirs or devisees, the whole interest in the land, the power of the administrator to make sale of the land for payment of debts, is gone also. In this opinion we do but follow the doctrine which has been distinctly in-

1822.

Ricard
v.
Williams

---

[a] *Bac. Abr. Fines*, &c. F. *cites* 1 *Mod.* 217.

timated both in the Massachusetts and Connecticut Courts.[a]

The remaining consideration under this head is, whether the possession of Joseph Dudley can be considered as an adverse possession so as to toll the right of entry of the heirs, and, consequently, extinguish, by the lapse of time, their right of action for the land, as well as extinguish by analogy of principle the power of the administrator to sell the land. It is said, that the entry of Joseph into the premises is consistent with the potential right of the creditors ; that he had a right to enter as a co-heir of his father, and if he entered as co-heir, his possession was not adverse, but was a possession for the other heirs and creditors, and he could not afterwards hold adversely, or change the nature of his possession, for the creditors might always elect to consider him their trustee. There is no doubt, that in general, the entry of one heir will enure to the benefit of all, and that if the entry is made as heir, and without claim of an exclusive title, it will be deemed an entry not adverse to, but in consonance with, the rights of the other heirs. But it is as clear, that one heir may disseise his co-heirs, and hold an adverse possession against them, as well as a stranger. And, notwithstanding an entry as heir, the party may, afterwards, by disseisin of his co-heirs, acquire an exclusive possession upon which the

*One heir may, by disseisin of his co heirs, acquire an exclusive possession, upon which the statute will run, both against his co heirs, and against creditors.*

b Gore v. Brazer, 3 *Mass. Rep.* 523. 542. Wyman v. Brigden, 4 *Mass. Rep.* 150. 155. Sumner v. Childs, 2 *Conn Rep.* 607.

statute will run.  An ouster, or disseisin, is not, indeed, to be presumed from the mere fact of sole possession; but it may be proved by such possession, accompanied with a notorious claim of an exclusive right.  And if such exclusive possession will run against the heirs, it will, by parity of reason, run against the creditors.  For the heirs, *qua* heirs, are in no accurate sense in the estate as trustees of the creditors.  They hold in their own right by descent from their ancestor, and take the profits to their own use during their possession; and the most that can be said is, that they hold consistently with the right of the creditors.  The creditors, in short, have but a lien on the land which may be enforced through the instrumentality of the administrator acting under the order of the Court of Probates.

But in order to apply the argument itself, it is necessary to prove that the ancestor had an estate of inheritance, and that the party entered as heir.  Now, in the case at bar, all the circumstances point the other way.  There is not, as has been already intimated, any proof, that William Dudley died seised of an inheritance in the land ; and there is direct proof that he asserted the inheritance to be in his son Joseph ; and the entry of the guardian of Joseph as well as his own entry, after his arrival of age, was under an exclusive claim to the whole, not by descent, but by title distinct or paramount.  There is certainly no incapacity in an heir to claim an estate by title distinct or paramount to that of his ancestor ; and if his possession is exclusive under such claim, and he holds all other persons out until the statute period

1822.

Ricard
v.
Williams.

has run, he is entitled to the full benefit and protection of the bar. It appears to us, therefore, that the jury ought to have been instructed, that if they were satisfied, that Joseph's possession was adverse to that of the other heirs, and under a claim of title distinct from, or paramount to that of his father, during his 25 years of exclusive possession, the entry of the purchaser, under the administrator's sale, was not congeable, and that the power of the creditor over the estate was extinguished. There was therefore error in the opinion of the Court to the jury, that as against the creditors of William Dudley, neither Joseph nor the tenant had gained any title to the land in controversy by possession.

For these reasons the judgment of the Circuit Court must be reversed, and the cause remanded, with directions to the Court to order *a venire facias de novo.*