# UNITED STATES *v.* CHAVEZ.

## SAME *v.* SAME.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

Nos. 38, 39. Argued October 16, 17, 1899. — Decided December 18, 1899.

Upon a long and uninterrupted possession of lands in Mexico, beginning long prior to the transfer of the territory in which they are situated to the United States, and continuing after that transfer, the law bases presumptions as sufficient for legal judgment, in favor of the possessor, in the absence of rebutting circumstances, which do not exist in this case.

To the land involved in these cases the appellees claimed a complete and perfect title, and petitioned the Court of Private Land Claims under section 8 of the act establishing

the court to so adjudge and confirm it. After due hearing the court did so adjudge, and entered a decree confirming the title to petitioners, from which decree the United States prosecuted this appeal.

The basis of the title to the southern portion of the tract (No. 38) is a grant made on the 5th day of November, 1716, to captain Antonio Gutierrez by captain Felix Martinez, the then governor and captain general of New Mexico. The appellees claim to derive from Gutierrez by conveyances and legal succession, and also claim a continuous possession in him, their predecessors in interest, and themselves from the date of the grant to the present time.

The course and the conveyance of the title is exhibited by an abstract filed by the claimants in the lower court. It is as follows:

## "Abstract of title.

"The claimant is unable to present any direct conveyance from the original grantee or from his heirs with which he is in any way connected. He relies upon the papers contained in archive No. 178 in the office of the surveyor general for New Mexico, to show that the original grantee, Antonio Gutierrez, took possession of the said tract of land and afterwards transferred the same to Diego Padilla, and that said Diego Padilla conveyed said land to Diego Borrego, who in turn conveyed the same to Nicolas de Chavez, these conveyances being made in the years 1734 and 1736. Claimant files herewith copies and translations in triplicate of said archive No. 178.

"Claimant avers that it appears from archive No. 371, in the office of the surveyor general for New Mexico, that at some time prior to the year 1785 the tract claimed had become the property of Clemente Gutierrez, the said archive No. 371 is a record of proceedings as to the estate of the said Clemente Gutierrez, and claimant files herewith copies and translations in triplicate of so much thereof as shows the inventory of all the real estate belonging to said Clemente Gutierrez and the hijuela given to each of the heirs showing their respective shares of said real estate.

" Claimant relies upon the following described deeds to connect him with the title of said Clemente Gutierrez and through him with the original title to the grant :

" Deed of Jose Lorenzo de la Pena, for himself and his sister Mariana and his brother Jose Rafael de la Pena, to Francisco Xavier Chavez, dated September 20, 1818, for an undivided fifth of the Bosque de los Pinos, bounded on the north by the lands the pueblo of Isleta, on the south by the lands known as those of Los Lentes, on the east by the hills, and on the west by the Rio del Norte, a translation of which deed, made in the year 1855 by the official translator of the office of the surveyor general for New Mexico, is now on file in this court in case No. 64, and triplicate copies thereof are filed herewith.

" Deed from Francisco Sarracino, representing his mother, Maria Luisa Gutierrez, one of the children of Clemente Gutierrez, to Francisco Xavier Chavez, for an undivided interest in the ranch of Bosque de los Pinos, bounded on the north by the league of the pueblo of Isleta, on the south by residents of Valencia, on the east the plain, on the west the Rio del Norte, dated October 19, 1821, a translation of which deed, made in the year 1855 by the official translator of the office of the surveyor general for New Mexico, is now on file in this court in case No. 64, and triplicate copies thereof are filed herewith.

" A deed from Juan Nepomuceno Gutierrez and Apolonia Gutierrez to validate the sale made by their father, Lorenzo Gutierrez, of the portion to which he and Lorenzo Gutierrez were entitled in the Bosque de los Pinos, dated December 27, 1839, a translation of which deed, made by the official translator of the office of the surveyor general of New Mexico in the year 1855, is now on file in this court in case No. 64, and triplicate copies thereof are filed herewith.

" Claimant avers that the originals of the three deeds above described were filed in the office of the surveyor general in 1855, and that they appear to have been withdrawn from that office by J. Bonifacio Chavez on the          day of          , 187 , and cannot now be found, although the official translations made at that time have been preserved.

" The said Francisco Xavier Chavez, to whom the said deeds were made, was the grandfather of this claimant, and claimant has inherited from his said grandfather an interest in the property conveyed by said deeds."

A fuller statement of the documentary evidence may be omitted except of the original grant. It was produced from the Spanish archives, and its translation is as follows:

" Plaintiff's Exhibit A.    Archive 315.
[Translation.]
1716                 (1.)                 No. 449.
To the Governor and Captain General:

· " I, Captain Antonio Gutierrez, a resident of the town of Albuquerque and a native of this Kingdom, appear before you in due legal form, and I state that, being very much in need of lands on which to plant in order to support my family, and also to the end that my sheep may have room to scatter out, and there being an uncultivated and unoccupied tract of lands below Isleta, apparently at a distance of two leagues, which formerly was held by Cristobal de Tapia, of which tract will you be pleased to make me a grant in the name of His Majesty in the same manner as it was held by said Cristobal de Tapia, and, if you be pleased to grant it to me, will you also order that the real possession be given me, designating to me boundaries and landmarks, in order that no prejudice may result to me in its possession?

" Wherefore I ask and pray, with due humility, that you will be pleased to make me the grant that I ask for in the name of His Majesty, as one who represents his royal person, and I swear in the name of God our Lord, and by the sign of. the Holy Cross, that this my petition is not in bad faith, and whatsoever is necessary, etc.

ANTONIO GUTIERREZ.    [SCROLL.]

" NOTE. — I ask and pray that the boundaries belonging to said tract be designated to me — on the north an arroyo with some cottonwood trees that comes down from the hills, on the south the pueblo of San Clemente, on the east the Del Norte

River, and on the west the hills of the Puerco River; and I swear in due legal form that my petition is not in bad faith, and whatever is necessary.

ANTONIO GUTIERREZ. [SCROLL.]

### Presentation.

"At the town of Santa Fé on the fifth day of the month of November, in the year one thousand seven hundred and sixteen, before me, Captain Felix Martinez, Governor and Captain General of this Kingdom and provinces of New Mexico and castellan of its forces and garrisons for His Majesty, it was presented by the party therein named.

### Decree and Grant.

"And it having been examined by me, I treated as properly presented in accordance with law, and, in view of the fact that it is His Majesty's will that his lands should be settled and fortified, in his royal name I make to the petitioner the grant that he asks for, as he describes it, and as Cristobal de Tapia formerly enjoyed it, without prejudice to a third party who may have a better right, and I command Captain Baltazar Romero that as soon as he be notified with this my decree he shall place the petitioner in real possession; and this shall serve him as a sufficient formal title for his protection, and when these proceedings shall have been had he will transmit this grant and possession to my civil and military secretary in order to make him a certified copy thereof, and that this original petition remain in the said archives; and in witness thereof I sign it with my civil and military secretary.

FELIX MARTINEZ. [SCROLL.]

Befor me,

MIGUEL TENORIO DE ALBA, [SCROLL.]
*Civil and Military Secretary.*"

Archive No. 178 consisted of three instruments. Two of them were respectively entitled an "instrument of donation," and of "real sale," and were respectively executed on the 7th and 11th of January, 1734, one Don Diego Borrego being grantee in both. The third was a conveyance from Borrego

to Don Nicolas Chavez. It is only necessary to quote portions of the first two instruments. From the first as follows:

" In this villa of San Felipe de Albuquerque, on the seventh day of January of the year one thousand seven hundred and thirty-four, before me, Captain Juan Gonzalez Bas, alcalde, mayor and war captain of the said town and its jurisdiction, personally appeared Diego Padilla, whom I certify I know, who, in the presence of two witnesses, said that he gave and did give freely to Don Diego Borrego, to wit, a piece of land which, as will hereinafter more fully appear, he had and possesses by donation, which, in favor of the said Padilla, was made by Captain Antonio Gutierrez, and its boundaries are: On the north, lands of Joaquin Sedillo; on the east, the Rio Grande; on the south, land of the said Diego Padilla, there serving as a landmark on the said boundary, the midway line between the two houses which the said Padilla built near the boundary line of the said donation, and on the west with the boundary line called for in the title papers of the whole tract which the said Padilla has; and as I say of the said lands, he makes gift and donation and conveys his own right, domicil and seign'ory, the said Diego Padilla, with the consent of his wife and children, to the said Don Diego Borrego, without any consideration other than his own will. . . ."

From the second the following recital, " personally appeared before me [the same officer as in the other instrument] Antonio Sedillo, the legitimate son of Joaquin Sedillo, and forced heir of the aforesaid." And further, that " he gave and did give in real sale a tract of land down the river and below the pueblo of Isleta. . . . And as I say, the said Antonio Sedillo gives and did give in real sale the said tract, after consultation and with the consent of his mother and brothers and sisters, who gave him authority for the same, because the said Joaquin died in debt, and in order to procure the amount which he owed; and the said Antonio Sedillo acknowledges that the said tract was acquired by his said father in part by grant in the name of His Majesty and in part acquired and held under real sale, as shown by five instruments which he delivered; and the boundaries of the said tract are: On the north, the

line of the league of the Isleta pueblo; on the east the Rio Grande; on the south the twin alamo, called by some the Culebra, and on the west the ridge of the Puerco River; and he says that the said tract he gives to Don Diego Borrego for the price and sum of two hundred dollars. . . ."

It will be observed that there are only direct conveyances from the original grantee, Antonio Gutierrez, to Don Diego Borrego, who received the title in 1734. Borrego conveyed to Chavez in 1736. From the latter no transfer is shown to any one, but that the title passed from him in some way to Clemente Gutierrez prior to 1785 is claimed to be established by what is called the "proceedings and inventory, division and partition, of the property which he left at his death among his wife and five children, concluded in the year 1785. (Archive No. 371.)"

The description in the inventory is as follows :

"Idem. A ranch below the boundary of the pueblo Isleta, commonly called San Clemente, Barrancas, and Los Pinos, of which they have possession, although there is no title deed of its boundaries, estimated at $1200."

The claimants trace title directly to the widow and children of Clemente Gutierrez.

The pueblo of Isleta presented a petition in the court below in which it adopted the allegations of the original petition and joined in the prayer for the confirmation of the validity of the title to the heirs and legal representatives of Antonio Gutierrez.

At the close of the testimony counsel for claimant stated, counsel for the government not objecting, that " it is admitted by the United States to be a fact that the pueblo of Isleta has had open and notorious possession and use of lands on the west side of the Rio Grande along between the boundary of the pueblo and the lands of the Los Lentes as far back as the memory of the oldest man living within the pueblo can extend, and that such possession and use have been claimed to be under a purchase from the heirs of Clemente Gutierrez, of which some documentary evidence has been presented in the paper executed by Lorenzo Gutierrez, dated May 3, 1808, and

that said paper, which is marked ' Plaintiff's Exhibit G,' and also Plaintiff's Exhibits H and I, come from the custody and control of the officers of said pueblo, who have had them as far back as memory can extend."

Exhibit G, referred to, is as follows :

" [Translation.]

" Don Lorenzo Gutierrez, captain of militia, commandant in the field, alcade of second election of the town of Albuquerque, its jurisdiction and frontier, etc., etc.

" Whereas the principal men of the pueblo of San Agustin de la Isleta have come before me asking for a deed of convey- ance for the lands which, from the boundary of the said pueblo to that of Los Lentes, from south to north, were sold to the said pueblo by my predecessor, Don Mariano de la Pena, from the estate of my mother, Donna Josefa Polonia Baca, of which I am the administrator, of which sale the documentary evi- dence is in the possession of the alcalde of first election of this said jurisdiction, Don Manuel de Artega, from whom, he being seriously ill, it cannot be obtained until he gets better or dies, and it being probable that it is deposited in the archives under his charge, in order to avoid the repeated peti- tions of the said men, and knowing that the purchase was really made, I give them the present, which I sign for their security, signing it in order that it may so duly appear, with two assisting witnesses, in this place of Parjarito, on the third day of the month of May of the year one thousand eight hun- dred and eight.

LORENZO GUTIERREZ.    [RUBRIC.]
" Assisting witness : AUGUSTIN DE LA PEÑA.    [RUBRIC.]
" Assisting witness : MANL. RUVI.    [RUBRIC.] "

The appellees also presented to the Court of Private Land Claims a petition for the confirmation of grant alleged to have been made " by the proper authorities of the Government of Spain to one Joaquin Sedillo, which land lies immediately south of the lands of the Indian pueblo of Isleta, and was bounded on the north by the line of the league of said pueblo,

on the east by the Rio Grande, on the south by a twin alamo, called by some the alamo de la Culebra, and on the west by the cefa of the Rio Puerco." This is the northern portion of the tract contained in the decree of confirmation.

It was further alleged " that the original grant papers evidencing the said grant have been lost or destroyed, and cannot now be produced. The fact of the existence of said grant is, however, shown by papers which constitute a portion of the archive 178 in the office of the surveyor general for New Mexico, copies and translations whereof are filed herewith in duplicate."

The matter of the petition constitutes case No. 39 on the docket of this court, which, though separately appealed has been submitted with case No. 38. The lands in each being contiguous — the north boundary in one being the south boundary of the other, and having common claimants and possession, and the title in each being supported in part by the same evidence — the Court of Private Land Claims consolidated them and included their confirmation in the same decree.

The petition alleged on information and belief, as to the southern boundary, as the petition in 38 alleged as to the northern boundary of the land therein described, that it "has been completely destroyed and its location cannot now be identified with certainty, and it is probable that no tradition of its location now exists, for the reason that the said tract of land and the one immediately south thereof had become united in ownership in the hands of one person as early as 1734, as will fully appear by reference to the said archive 178, hereinbefore mentioned."

The archives referred to and the documentary evidence are the same as in No. 38, except there is no grant.

The oral evidence of possession was given by the claimant, Francisco Chavez. He testified that he became personally acquainted with the tract of land commonly known as Bosque de los Pinos, in Valencia County, New Mexico, (the tract confirmed to him,) about 1839, and it was then in the possession of a relation of his grandmother. And from the records he

knew his grandfather died in 1829, and from what he had
been told by the family, his grandfather, before the latter's
death, "possessed it, farmed it, and kept cattle and sheep
upon it." He further testified that since he has known it his
father had possession, then his mother, and after her death
the heirs, and the possession had never "in any way been dis-
turbed or encroached upon by other people." The boundaries
of the Bosque de los Pinos he gave as follows: "On the north,
by the Isleta Indian pueblo lands; on the east, by the old
river bed; a stone marks the northeast boundary, and on the
south by the town of Peralta; on the west, by the present
river."

The river referred to is the Rio Grande del Norte, which at
the time of the original grants was their eastern boundary,
but which some time subsequently to their date changed its
channel. The land between the old and new channels is
denominated in the evidence and in the decree of the court as
"Bosque de los Pinos," and was confirmed to Francisco
Chavez. All the rest of the tract was confirmed to the pueblo
of Isleta.

The sketch on page 519, which was introduced in connection
with the testimony of Chavez, shows the relation of the
grants, the location of some of the natural objects referred to,
and the change in the river bed.

Mr. *William H. Pope* for appellants. Mr. *Solicitor Gen-
eral* and Mr. *Matthew G. Reynolds* were on his brief.

Mr. *Frank W. Clancy* for appellees.

Mr. JUSTICE McKENNA, after making the above statement,
delivered the opinion of the court.

The title asserted by appellees is deficient in the support of
direct evidence. Is the deficiency supplied by the probative
force of the possession of the land? Private ownership of the
property with possession is claimed for over one hundred and
thirty years before the cession of the territory to the United

Sketch Map of the
Joaquin Sedillo Grant
Approximate Scale.

north

2 MILES.

Isleta Grant.

Joaquin Sedillo Grant.

Antonio Gutierrez Grant.

San Clemente Grant.

Los Pinos

Los Lentes o. o

Los Lunas R. R.

Lomas o Ceja del Rio Puerco

Rio Puerco.

States. A continuous possession is shown from some time prior to 1785, inferentially from 1716. Mexico respected that ownership and possession for the full period of its dominion over New Mexico. Spain respected them for over one hundred years, and at the time of the cession of the sovereignty over the territory to the United States no one questioned them. Succeeding to the power and obligations of those Governments, must the United States do so? This is insisted by their counsel, and yet they have felt and expressed the equities which arise from the circumstances of the case. Whence arise those equities? That which establishes them may establish title. Upon a long and uninterrupted possession, the law bases presumptions as sufficient for legal judgment, in the absence of rebutting circumstances, as formal instruments, or records, or articulate testimony. Not that formal instruments or records are unnecessary, but it will be presumed that they once existed and have been lost. The inquiry then recurs, do such presumptions arise in this case and do they solve its questions?

*Fletcher* v. *Fuller*, 120 U. S. 534, was an action of ejectment. Both parties claimed the land in controversy under one Francis Richardson, who died in 1750; the plaintiffs under his daughter, Abigail Fuller; the defendants under his grandson. The question arose whether a deed could be presumed to have been executed by Abigail Fuller to the grandson or to his father, uniting all interests in him. It was presented in instructions. The defendants asked an instruction that the jury might presume the execution of such a deed to their ancestor in title. The court refused, and instructed the jury as follows: " Of course, gentlemen, if you find that you can presume a grant, if you find from the testimony that there was a lost deed which passed from Abigail Fuller to Jeremiah Richardson, or to Francis Richardson, and the property was inherited by Jeremiah, so that Jeremiah had a good title to convey to Stephen Jencks, that makes the title of the defendants here complete . . . But, gentlemen, you are to look into the evidence upon this question of a grant, and if the evidence in favor of the presumption is overcome

by the evidence against such grant, then, of course, you will not presume one. It is a question of testimony."

· The defendants requested the court to instruct the jury " that the presumption they were authorized to make of a lost deed was not necessarily restricted to what may fairly be supposed to have occurred, but rather to what may have occurred, and seems requisite to quiet title in the possessor." The instruction was refused, and on error to this court it said, throug Mr. Justice Field, that the purport of the charge was in effect " that in order to presume a lost deed the jury must be satisfied· that such a deed had in fact actually existed ; . . . therein was error.

" In such cases ' presumptions,' as said by Sir William Grant, ' do not always proceed on a belief that the thing presumed has actually taken place. Grants are frequently presumed, as Lord Mansfield says, *Eldridge* v. *Knott,* Cowp. 215, merely for the purpose and from a principle of quieting possession. There is as much occasion for presuming conveyances of legal estates, as otherwise titles must forever remain imperfect and in many respects unavailable, when from length of time it has become impossible to discover in whom the legal estate (if outstanding) is actually vested.' *Hillary* v. *Waller,* 12 Ves. 239, 252."

And quoting Mr. Justice Story in *Ricard* v. *Williams,* 7 Wheat. 59, 119, " ' a grant of land may as well be presumed as a grant of a fishery, or of common, or of a way. Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession.' It is not necessary, therefore, in the cases mentioned, for the jury, in order to presume a conveyance, to believe that a conveyance was in point of fact executed. It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed, and that its

existence would be a solution of the difficulties arising from its non-execution." And, further quoting from the Supreme Court of Tennessee in *Williams* v. *Donell*, 2 Head, 695, 697, "'it is not indispensable, in order to lay a proper foundation for the legal presumption of a grant, to establish a probability of the fact that in reality a grant was ever issued. It will afford a sufficient ground for the presumption to show that, by legal possibility, a grant might have been issued. And this appearing, it may be assumed in the absence of circumstances repelling such conclusion that all that might lawfully have been done to perfect the legal title was in fact done, and in the form prescribed by law.'"

These principles were affirmed as applicable to grants of the kind we are considering in *United States* v. *Chaves*, 159 U. S. 452. Mr. Justice Shiras, speaking for the court, said:

" Without going at length into the subject, it may be safely said that by the weight of authority, as well as the preponderance of opinion, it is the general rule of American law that a grant will be presumed upon proof of an adverse, exclusive and uninterrupted possession for twenty years, and that such rule will be applied as a *presumptio juris et de jure*, whenever by possibility a right may be acquired in any manner known to the law. 1 Greenleaf Ev. 12th ed. § 17; *Ricard* v. *Williams*, 7 Wheat. 59, 109; *Coolidge* v. *Learned*, 8 Pick. 503. Nothing, it is true, can be claimed by prescription which owes its origin to, and can only be had by, matter of record; but lapse of time, accompanied by acts done or other circumstances, may warrant the jury in presuming a grant or title by record. Thus, also, though lapse of time does not of itself furnish a conclusive bar to the title of the sovereign, agreeably to the maxim, *nullum tempus occurrit regi;* yet if the adverse claim could have had a legal commencement, juries are advised or instructed to presume such commencement, after many years of uninterrupted possession or enjoyment. Accordingly royal grants have been thus found by the jury, after an indefinitely long-continued peaceful enjoyment-accompanied by the usual acts of ownership. 1 Greenleaf Ev. § 45.

" The principle upon which this doctrine rests is one of general jurisprudence, and is recognized in the Roman law and the codes founded thereon, Best's Principles of Evidence, § 366, and was, therefore, a feature of the Mexican law at the time of the cession."

The application of these principles to the case at bar does not need many directing words.

It is contended by the Government that no juridical possession is shown under the grant to the southern portion of the tract; that there is no grant shown to Sedillo of the northern portion of the tract; that admitting both are shown there is no evidence that the title which Don Diego Borrego received in 1734 was conveyed to Clemente Gutierrez, who was shown to have had the possession claiming title in 1785. To infer all these things, it is argued, is to build presumption on presumption, and carry constructive proof too far. The argument is not formidable. The instances mentioned are of the same kind as those in the cited cases, and the principle of the cases is not limited or satisfied by the presumption of only one step in the title. It requires the presumption of all that may be necessary to the repose of the title — to the absolute assurance and quietude of the possession. Quoting the language of the Supreme Court of Tennessee, approved by this court, it assumes that all " that might lawfully have been done to perfect the legal title was in fact done and in the form prescribed by law." And, " There is hardly a species of act or document, public or private, that will not be presumed in support of possession. Even acts of Parliament may thus be presumed, as also will grants from the crown." Best on, Presumptions, sec. 109.

The number of steps presumed does not make the principle different, and whether it would give more strength to rebutting testimony we might be concerned to consider if there was any such testimony.

We think there can be but one conclusion in the case. The possession of the land began in wrong or began in right. If in wrong, it must be shown. The maxims of the law declare the other way. Besides it is admitted that the Pueblo of Ise-

leta has had open and notorious possession as far back as the memory of the oldest living inhabitant can extend, and that it was claimed under the heirs of Clemente Gutierrez, and evidenced by documents which came from the custody and control of the officers who have had them during like memory. Back to Clemente Gutierrez, therefore, a continuous possession is established by admission and by testimony not contradicted. Back beyond the period of living memory and beyond that period the title needs no inquiry for its validity and repose.

But there is some documentary evidence coming from a remoter time, and it has been discussed by counsel. We do not think it is necessary to consider it at any length. It consists of the original grant to Antonio Gutierrez, three instruments of conveyance, one reciting the grant to Sedillo, and all asserting ownership and possession of the lands, and an inventory made of the estate of Clemente Gutierrez by the governor of New Mexico, then an official of Spain. The latter was made a judicial record, and the lands mentioned in it distributed among the heirs. It is to this possession that the appellees trace, as we have seen, and the questions which can arise about it — from whom derived and the rightfulness or wrongfulness of it — depend upon principles already sufficiently discussed. It is enough to say that Clemente Gutierrez died in possession, and his possession was proof of ownership.

It is further contended by the Government that the record shows that the appellees do not hold the interests of all of the heirs of Clemente Gutierrez, and that, therefore, the Court of Private Land Claims should have confirmed the grant, "not to the claimants appearing before it, but to the 'assigns and legal representatives of the original grantee.'" And it is urged that "to make a decree in any other form is to 'conclude and affect the private rights of persons as between each other,' and this the statute [of 1891] prohibits."

We do not concur in this view of the statute. By careful distinction it precludes such view. Section 8 of the statute under which the petitions were presented provides that persons claiming lands under a Spanish or Mexican title "that

was complete and perfect at the date when the United States acquired sovereignty therein shall have the right (but shall not be bound) to apply to said court in the manner in this act provided for in other cases for confirmation of such title;" but the confirmation of such title "shall be for so much land only as such perfect title shall be found to cover, always excepting any part of such land that shall *have been disposed of by the United States,* and always subject to and not to affect any conflicting private interests, rights or claims held or claimed adversely to any such claim or title, or adversely to the holder of any such claim or title. And no confirmation of claims or titles in this section mentioned shall have any effect other or further than as a release of all claim of title by the United States; and no private right of any person, as between himself and other claimants or persons in respect of any such lands, shall be in any manner affected thereby."

It will be observed that the provision is that from the confirmation there shall be excepted *land that shall have been disposed of by the United States.* It is, however, made subject to "conflicting private interests, rights or claims." The distinction is obvious, and the reason for it equally so. The proceeding is not a litigation between conflicting private interests; it is one against the United States, and determinative only of the title against the United States. To avoid confusion the lands that have been disposed of by the United States are required to be excepted from confirmation. To all other interests and claims the confirmation is made subject. The forum for their determination is the ordinary courts. *Ainsa* v. *New Mexico & Arizona Railroad, ante,* 76; and *United States* v. *Conway, ante,* 60; both decided at the present term.

*Decree affirmed.*